COMPANIA MEXICANA REFINADORA ISLAND, Appellant, *v.* COMPANIA METROPOLITANA DE OLEODUCTOS et al., Respondents.

(Argued December 3, 1928; decided December 31, 1928.)

*Leavitt J. Hunt* and *Robert McLeod Jackson* for appellant. The defendants were doing business in the State of New York at the time of service of process in March, 1927, so as to be amenable to the process of the courts within the State. (*Pennsylvania Steel Co.* v. *New York*

*Railway Co.*, 198 Fed. Rep. 735; *United States Trust Co.* v. *Wabash & Western Railway Co.*, 150 U. S. 287; *Birmingham Trust & Savings Co.* v. *Atlanta, B. & A. Ry. Co.*, 271 Fed. Rep. 731; *American Brake Shoe & Foundry Co.* v. *New York Rys. Co.*, 282 Fed. Rep. 293; *Bartlett* v. *Keim*, 50 N. J. L. 260; *Grant* v. *Cananea Consolidated Copper Co.*, 189 N. Y. 241; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *International Harvester Co. of America* v. *Commonwealth of Kentucky*, 234 U. S. 579; *Stockton* v. *Goodyear Tire & Rubber Co.*, 124 Misc. Rep. 213; *National Furniture Co.* v. *Spiegelman & Co.*, 198 App. Div. 672.)

*William M. Chadbourne, Clinton De Witt Van Siclen* and *Alfred H. Phillips* for respondents. Defendants were not " doing business " within the State of New York at the time of the attempted service of process. (*Bank of America* v. *Whitney Bank*, 261 U. S. 171; *Grant* v. *Cananea Con. Copper Co.*, 189 N. Y. 241; *Stockton* v. *Goodyear Tire & Rubber Co.*, 124 Misc. Rep. 213; *Bagdon* v. *Phil. & Reading C. & I. Co.*, 217 N. Y. 432; *Butler Bros. Shoe Co.* v. *U. S. Rubber Co.*, 156 Fed. Rep. 1; *Brookford Mills, Inc.*, v. *Baldwin*, 154 App. Div. 553; *Hamlin Bros.* v. *Barrett & Co., Inc.*, 220 App. Div. 763; 246 N. Y. 554; *Lillibridge, Inc.*, v. *Johnson Bronze Co.*, 220 App. Div. 573; 247 N. Y. 548; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259.)

LEHMAN, J. Attempted service of the summons in this action upon the defendant corporations has been set aside. Both corporations are organized under the laws of Mexico. In that country they produce and transport oil. In this State the oil is sold. It is said that the corporations are present in this State and are transacting business here. The Appellate Division has made contrary finding.

We set forth briefly our conclusions, based on statements of fact contained in the voluminous affidavits submitted upon the motion. The defendant corporations have never had any office or bank account in this

State. No officer, director or employee has ever habitually conducted any corporate business here. The Island Oil and Transport Company, hereinafter called the "Transport Corporation," prior to the year 1919 owned all the stock of the defendant corporations. In June, 1919, it organized under the laws of the State of Delaware the Island Oil Marketing Corporation. It used that corporation for the purpose of selling the oil of all its subsidiary corporations. It controlled these corporations through its stock ownership; it alone could ultimately enjoy the profits made by these corporations. It alone must eventually suffer from losses sustained by them.

From its offices here the parent corporation directed the corporate officers of the defendant corporations in the transaction of their corporate business in Mexico. In like manner it directed the officers of the Marketing Corporation in the transaction of its corporate business of selling oil here. Contracts were drawn up between the producing corporations and the Marketing Corporation. By their terms the Marketing Corporation was constituted the agent of the producing corporations for the sale of their products. The agent was to receive compensation for its services and to be subject to the directions of the principals. Expenses of the sales were to be paid by the principals, the net proceeds were to belong to them.

In practice the parent company treated all the subsidiary corporations as if they were merely departments of its own business. It made use of the corporate structure it had created, to the extent that such structure served the purposes of its own business. Otherwise it disregarded the elaborate corporate structure and the separate corporate entity of the subsidiary corporations. Through the Marketing Corporation it sold the products of the other subsidiaries. They received credit for the proceeds of the sale on the books of the Marketing Corporation. Drafts drawn by the subsidiary corporations for the

expenses of their operations in Mexico were paid. Such payments were charged against the subsidiary corporations' credit on the books of the Marketing Corporation. Other payments and expenses were charged in like manner. The net balance, however large, was never paid to the subsidiary corporations. No compensation was ever paid to the Marketing Corporation.

The parent corporation fell into financial difficulties. The stock of its subsidiary corporations had been pledged with the New York Trust Company under a trust indenture as security for loans or advances. Under the terms of the indenture, the New York Trust Company as trustee acquired the sole voting rights and rights to dividends upon the stock of the subsidiary corporations, upon default in payment by the parent company in 1924. In 1924, receivers of the Transport Corporation and of the Marketing Corporation were appointed by the United States District Court. The receivers continued the business of these corporations. Disputes had arisen as to the ownership of the proceeds of oil produced by the Mexican corporations. At the request of the New York Trust Company, the receivers were directed to keep such proceeds segregated until conflicting rights to the proceeds were adjudicated. The receivers were directed to carry on the business of the defendant corporations, though these corporations were not parties to the receivership proceedings.

Since that time the receivers of the Transport Corporation and the Marketing Corporation have continued to conduct business and to sell the oil of the defendant corporations in the same manner as this business had been conducted before the receivership. With the consent and co-operation of the New York Trust Company they have also exercised control over the defendants' corporate affairs in Mexico. Grace, an employee of the Island Corporation, held a general power of attorney for the defendant corporations. He did not exercise that

power except upon sporadic and rather unimportant occasions. His acts are not significant; they lack the continuity and permanence which are essential elements of corporate presence and corporate transaction of business within the State. (*Ultramar Co., Ltd.,* v. *Minerals Separation, Ltd.,* 236 N. Y. 647.) The real question presented in this case is whether the receivers of the Transport Corporation and the Island Corporation are transacting the defendants' business in this State and are their managing agents.

The courts of this State have acquired jurisdiction of the defendant corporations only if the corporations were actually present in the State and transacting their business here at the time of the attempted service of the summons. Doubtless the sale of the defendants' products might, under some circumstances, constitute part of the defendants' business. The defendant corporations might come into the State to transact this business. If so, they could be served with process here. On the other hand, they might abandon this business or leave others carry it on. Unless they come into the State and here transact the business themslves, they are not subject to the jurisdiction of our courts. That is the sole test we may apply. (*Bank of America* v. *Whitney Central National Bank,* 261 U. S. 171.) The defendant corporations cannot be said to have come into the State merely because the parent company, exercising domination derived from its stock ownership, gave directions as to the manner in which the defendants' officers in Mexico should conduct the defendants' affairs. Such directions constitute no part of the corporate business. In giving those directions, the parent company did not act as agent for the subsidiary corporation. It acted only for itself. In the case of *Grant* v. *Cananea Consolidated Copper Company* (189 N. Y. 241) the president of the defendant corporation directed its affairs as president. He acted under authority conferred by the corporation. Such directions

may perhaps constitute corporate acts and conceivably, if habitually given, might constitute the transaction of corporate business. Not so, where the directions are given only by a controlling stockholder who has no authority to represent the corporation or to act for it. (*Cannon Manufacturing Co.* v. *Cudahy Packing Co.*, 267 U. S. 333.)

The question of whether the sale of the oil produced by the defendant corporations constituted transaction of their business by the defendant corporations themselves presents greater difficulty. In no two cases are the facts exactly alike. No case has been found where analogy to the problem we must decide is complete. Other decisions are guide posts rather than direct authorities in the solution of our problem.

If the sales contracts made by the defendant corporations had been carried out fully, then it might be argued that the Marketing Corporation was merely the agent for the defendant corporations in the transaction of their business. These contracts have not been abrogated; perhaps, for some purposes, they are in effect; yet in the transaction of business they have been ignored. Except for bookkeeping purposes the parent company has disregarded the separate ownership of corporate property by its subsidiary corporations. It has sold the oil of the defendant corporations and has retained the proceeds of the sales as if the business of the subsidiary corporations in Mexico had been merely departments of its own business. Indeed, even the book entries might be the same if the business of the defendant corporations in Mexico had been conducted by separate departments of the parent company without separate corporate identity. The Marketing Corporation was treated rather as if it were the agent of the parent company than the agent of the defendant corporations. The Marketing Corporation sold the products of the defendant corporations and retained the proceeds, not so much because a formal sales

agency contract was drawn up, as because the parent company chose to compel the defendant corporations, through its domination of their officers, to confine their corporate activities to the production or transportation of oil in Mexico. In other matters the parent company disregarded the separate corporate entities of its subsidiaries. It transacted the business of selling oil through another subsidiary as if it were its own business. Its transaction of that business did not bring the defendants into this State. Rather it resulted in excluding them from the State.

The receivers continued to conduct the same business in the same way. Indeed, the fact that the receivers were authorized by the Federal court to transact the business of the defendant corporations, though these corporations were not parties to the receivership proceedings, shows that the business here of the defendant corporations was regarded as part of the business of the corporations whose affairs were being administered by the courts. We are not concerned with question of the ownership of the proceeds of that business. The decisive factor in this case is that the business here was not transacted by officers, agents or employees of the defendants, chosen and controlled by them. It was transacted by the officers, employees or receivers of other corporations transacting the business of the corporations they represented rather than the business of the defendant corporations. At no time was there present in this State any representative of the defendants who regularly conducted their business. From such evidence, the Appellate Division might properly decide that the defendant corporations did not transact their business here.

The orders should be affirmed, with costs, and the first question certified answered " No."

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur.

Orders affirmed, etc.