## PICKTHALL v. ANACONDA COPPER MIN. CO. et al.

District Court, S. D. New York.

Oct. 3, 1947.

Gerald F. Finley and Arnold B. Elkind, both of New York City, for plaintiff.

Chadbourne, Wallace, Parke & Whiteside, of New York City (Horace G. Hitchcock, of New York City, of counsel), for defendant Butte, A. & P. Ry. Co.

MEDINA, District Judge.

Defendant Butte, Anaconda and Pacific Railway Company by its attorneys appearing specially and solely for the purpose of the motion, moves to set aside the service of process and to dismiss the complaint. As the action arises under the Employers' Liability Act of the United States, 45 U.S.C.A. § 51 et seq., the motion is framed in the familiar double aspect. It attacks the jurisdiction of the court over the person of the defendant and, at the same time, claims improper venue. The questions, while not identical, are similar and may be treated together. 45 U.S.C.A. § 56 requires that an action brought under the Federal Employers' Liability Act be brought in the district of the residence of the defendant or in which the cause of action arose or "in which the defendant shall be doing business at the time of commencing such action." Jurisdiction, however, in the constitutional sense of due process must find a basis in something which the courts will recognize as sufficient to bring the foreign corporation defendant physically within the territorial limits of the district. As a matter of convenience the courts have examined into the facts of each case to ascertain, as the phrase goes, "whether the foreign corporation defendant is doing business within the state." 1 Moore's Federal Practice, pp. 315 et seq.

The complaint alleges that plaintiff's decedent was killed on November 25, 1946, while employed by defendant Butte, Anaconda and Pacific Railway Company, in interstate commerce, as a switchman in the yards of said defendant at Ramsey, Montana. It is alleged that plaintiff is a citizen of Montana residing in Butte and that the decedent was a resident of Butte, Montana, at the time of his death; also that said defendant is a corporation, incorporated under the laws of the State of Montana.

It is not disputed that the Railway Company operates a railroad located entirely in the State of Montana; it has not qualified to do business in the State of New York; it solicits no freight or passenger business in New York. The Railway Company operates about one hundred seventeen miles of track and its entire three hundred sixty-four employees, exclusive of officers and directors, are located in Montana.

As the defendant Anaconda Copper Mining Company owns all the capital stock of the Railway Company, with the exception of qualifying shares, and as the officers and certain of the directors of the Railway Company are also officers of defendant Anaconda Copper Mining Company, which maintains offices at 25 Broadway, New York City, and most of these individuals reside in the vicinity of New York City, the affairs of the Railway Company have been managed for many years in a manner which would serve the convenience of all concerned. The by-laws of the Railway Company and the testimony of Charles E. Moran, the Secretary of the Railway Company, taken pursuant to stipulation and submitted "as a primary record of the business activities of the defendant Butte, Anaconda and Pacific Railway Company in the Southern District of New York" constitute the evidence from which it is to be found that the Railway Company at the time of the service of process herein was or was not doing business in the Southern District of New York.

Cornelius F. Kelley, who resides at Manhasset, New York, is the Chairman of the Board of Anaconda and at the same time President of the Railway Company. He receives a salary of $2500 a year as Presi-

dent of the Railway Company which is substantially less than his compensation as Chairman of the Board of Anaconda. James R. Hobbins, who resides in New York City, is President of Anaconda and Vice-President of the Railway Company. He receives no salary in the latter capacity. James E. Woodard who also resides in New York City, is Treasurer of Anaconda and also Treasurer of the Railway Company. He receives a salary of $2500 a year as Treasurer of the Railway Company. Mr. Moran is Secretary of both Companies and receives a salary of $1000 a year as Secretary of the Railway Company. He resides in Plainfield, New Jersey.

The directors of the Railway Company are Mr. Kelley and Mr. Hobbins, above referred to, and also Robert E. Dwyer, W. H. Hoover and R. E. Brooks. Mr. Dwyer resides either in New York City or the metropolitan area and Mr. Hoover also maintains a residence there except that he "also maintains a residence in Montana and considers himself a Montana resident." Most, if not all, of the officers and directors just specified have their headquarters in the Anaconda offices at 25 Broadway, New York City. Mr. Brooks, the General Manager, is located most of the time and resides in Montana. He receives $12,000 a year for the duties which he performs pursuant to his contract with the Railway Company.

The by-laws of the Railway Company provide in Article 1, Section 3 thereof:

"All the affairs of the Company shall be managed by the Board of Directors, who shall approve & ratify all tariffs of the Company."

Article 2 provides that the annual meeting of stockholders called for the election of directors shall be held at the general office of the Company in Anaconda, Montana. Section 3 of the said Article provides with respect to regular meetings of the Board of Directors:

"Regular meetings shall be held at the general office of the Company, in the City of New York, at 11:15 o'clock A.M., on the fourth Monday of March, June, September and December of each year."

Article 3, Section 2 provides:

"The President shall have & exercise general supervision & control over the entire property, business & affairs of the Company. All the officers & agents of the corporation shall be responsible to him for the proper & faithful discharge of their several duties, & shall obey such orders & make such reports to him touching the business of the Company under their charge, as he may from time to time direct; & any General Manager, Engineer, Superintendent, or Agent of the Company may be discharged by him, if in his judgment there be cause for such discharge, at any time when the Board of Directors shall not be in session. All instruments requiring the corporate seal, & all certificates of Stock, shall be signed by him; & he shall have such other powers as are incident to the office, or may from time to time be prescribed or conferred by the Board."

Articles 4 and 5 prescribe the customary duties for the Secretary and the Treasurer; and it appears that the corporate seal is commonly located in New York City in the custody of the Secretary.

The space used by the officers of the Railway Company is their regular office space as officers of Anaconda. No space in the offices of Anaconda is assigned for the special use of the Railway Company; nor does the Railway Company, so far as appears, own or lease any real estate in New York. The name of the Railway Company does not appear on the door of any office of Anaconda in New York, nor on the building directory at 25 Broadway, New York City, nor does it have a telephone listing.

The operations of the Railway in Montana are carried on in Montana from the offices of the Railway in Anaconda, Montana, by a General Manager and Superintendent, and a Chief Engineer. There is also an Assistant Secretary and Assistant Treasurer and Auditor at Anaconda, Montana, who conducts all the regular correspondence of the Railway Company in Anaconda, keeps all the books of accounts and prepares all financial statements. The payroll is kept in Montana and paid by drawing on a bank in Montana. The salaries

of the officers in New York City are paid by checks drawn in Montana; and all purchases of equipment and supplies are made by the General Manager or the Assistant Treasurer in Montana.

There are no outstanding bonds which require any trustee or fiscal agent in New York, and all contracts entered into in the normal course of operations of the Railway Company are entered into in Montana.

The Railway Company maintains a bank account in New York for the purpose of paying eastern railways their portion of freight collected for them for freight transported over the line of the Railway Company in Montana on through operations, under joint tariff arrangements. Checks were drawn upon or deposits made in this bank account in connection with the payment of dividends in the years 1942, 1943, 1944 and 1945, when the account was utilized in order to clear dividend payments, declared in late December of those years, before January 1st of the following year. There was no dividend in 1946.

Despite the fact that agents and employees attend to the details of the operation of the railroad in Montana, it is abundantly plain that all the executive functions are actually performed by the officers and directors in their respective capacities, in New York City. This is largely accomplished by the review by the President of quarterly reports that come in from Anaconda, Montana, relating to the Railway Company's operations; and it is doubtless a fact that the President, in such a matter as the discharge of one of the western employees would place considerable reliance on the advice of the Vice-President in the west. While the performance of their functions by the executive officers and by the directors as well may give the superficial appearance of being perfunctory and formal, due to the submission of reports and other documentary material emanating from Montana, the evidence justifies no other finding and conclusion than that the supervision and control exercised by the officers and directors are active, real and continuous. Furthermore, the testimony of Mr. Moran indicates clearly that these executive functions are performed by the individuals above referred to wholly in their capacities as officers and directors of the Railway.

It is stated in the brief submitted on behalf of the Railway that "it would be very seldom that any matters are presented to the Directors' meetings other than those that are merely confirmatory." But it is not denied that such instances occasionally occur; and, even if they did not, the power and authority of the directors are undoubted, and it is not material that they choose to exercise or have in the past commonly exercised this authority by giving their approval to acts of operation or plans for future operation of the railroad properties. This would seem to indicate no more than that, in general, the agents and employees selected for the performance of ministerial duties perform these duties in a satisfactory and competent manner.

One of the most important of the executive functions has to do with the tariff schedules to be filed with the Interstate Commerce Commission. The by-laws provide, as above stated, that these must be approved and ratified by the Board of Directors. As in the case of the other executive functions, this particular one is actually carried out, continuously and from time to time as occasion requires, by action taken in New York City and in the Southern District of New York. While these tariff schedules "are made up by the operating officials in Anaconda," they do not become the tariff of the Company until they are approved and ratified by the Board of Directors.

██ The tests of whether or not a foreign corporation has engaged in such activities in the district as will make it subject to service of process there are necessarily vague and general. The formula of "presence" within the district or that of "doing business" in the district are merely convenient phrases which serve largely for purposes of classification and discussion. Any more explicit formulation of doctrine would inevitably serve as a pattern of evasion. As has been held again and again, each case must rest upon its own bottom, and be decided according to its own peculiar facts.

It may be useful, however, to dispose of the principal contentions of counsel for the Railway.

■ One argument is in the nature of constructing a man of straw only to demolish him. Thus reference is made to the cases (Green v. Chicago, B. & Q. Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Trizna v. New York, C. & St. L. R. Co., D.C., 57 F.Supp. 484) which hold that solicitation of passenger or freight traffic, in the case of a railroad wholly operated and maintained out of the jurisdiction, will not constitute doing business, but that very little in addition will suffice. Here it is pointed out that there is no solicitation whatever within the district. But it has never been held that the solicitation of business or lack of solicitation of business is the one significant and determinative factor. Acts and conduct other than solicitation have often been held sufficient.

■ The chief argument appears to be that the making of executive decisions within the district and the holding of directors' meetings therein do not constitute doing business in the district. The soundness of this argument depends entirely upon the character, the continuity and the regularity with which these meetings are held and these decisions are made. The authority pursuant to which these decisions are made and these meetings are held is also a matter of significance. Where, pursuant to undoubted authority, the officers of a foreign corporation regularly and systematically, year in and year out, manage the affairs of the corporation and determine its policies within the district, and where the functions of the Board of Directors are performed with similar regularity, there would seem to be little basis for holding that the corporation is not doing business in the district, simply because the ministerial acts of the corporation's agents and employees are performed elsewhere. The cases cited are all distinguishable.

In Bowles v. American Distilling Co., D.C., 62 F.Supp. 15, it appeared that the president of one of the defendants while in New York made executive decisions for the company. There would be some parallel with the instant case were it shown here that Mr. Kelley physically resided in Montana but occasionally came to New York and on such occasions made a few isolated executive decisions. Such was the situation in Empire Fuel Co. v. Lyons, 6 Cir., 257 F. 890. In that case the general manager in charge of the defendant's operations spent about one-half of his time in Hugheston, West Virginia, where defendant's coal mines were apparently located and the remainder at Cincinnati, where he resided, going back and forth from Cincinnati to the mines. It was held that the making of certain executive decisions at his home in Cincinnati "standing alone," was not enough to constitute a doing of business by defendant in Ohio. See also Michigan Lubricator Co. v. Ontario Cartridge Co., 6 Cir., 275 F. 902.

In Conley v. Mathieson Alkali Works, 190 U.S. 406, at page 411, 23 S.Ct. 728, at page 730, 47 L.Ed. 1113, it was held:

"The residence of an officer of a corporation does not necessarily give the corporation a domicile in the state. He must be there officially—there representing the corporation in its business."

■ That is precisely the case with the officers of the Railway Company here. They were not mere residents of New York City and the vicinity; they were here officially as officers and directors of the Railway Company, functioning "at the office of the Company in the City of New York," as provided in the by-laws.

The Conley case is relied upon by defendant, as jurisdiction was denied despite the fact that the company's by-laws provided that directors' meetings should be held in New York City and some such meetings had actually been held there during the year when the purported service was made. An examination of the opinion in that case, however, discloses that, despite the by-laws, the meetings were in general not held in New York City but sometimes in Saltville and sometimes in Providence. While it did appear that meetings were held "not more than two or three times in New York City," the evidence disclosed that on these isolated occasions the meetings were held at the branch office of a banking firm in Wall Street.

The fact that the by-laws provided for the meetings of the Board of Directors to be held in New York City in the present case would be of little significance had the meetings been held elsewhere. The important circumstance is that the meetings of the Board of Directors were held in New York City pursuant to proper authority and were held regularly, systematically and at the times and at the place provided for in the by-laws.

It is further contended on behalf of the defendant Railway that such acts as are performed by the executive officers and directors of the Railway Company are merely done "as representatives of the owner," the other defendant, Anaconda Copper Mining Company, the holder of all of the stock of the Railway Company, except qualifying shares; and Compania Mexicana Refinadora Island, S. A. v. Compania Metropolitana, 250 N.Y. 203, 164 N. E. 907, is cited. The difficulty is that the facts of the two cases differ radically. As held in the Compania Mexicana case, at page 210 of 250 N.Y., at page 910 of 164 N.E.:

"The decisive factor in this case is that the business here was not transacted by officers, agents or employees of the defendants, chosen and controlled by them. It was transacted by the officers, employes or receivers of other corporations transacting the business of the corporations they represented rather than the business of the defendant corporations. At no time was there present in this state any representative of the defendants who regularly conducted their business."

In the present case the officers and directors of the Railway Company were present within the district and the evidence shows conclusively that the domination and control exercised by them were exercised by them in their capacities as officers and directors of the Railway Company.

Finally, reliance is placed upon the granting by New York Supreme Court Justice Thomas T. C. Crain on May 23, 1928, of a motion by the moving defendant herein, to set aside service of process in an action entitled George H. Parker v. Butte, Anaconda & Pacific Railway Company. A certified copy of the record in that case has been submitted with the motion papers. It appears therefrom, however, that the evidence is far from identical with that now before the Court; and the brief memorandum of Justice Crain does not contain any findings nor any statement of the reasons for his conclusion. In any event, the decision is not binding here and will not be followed.

What has been said on the subject of jurisdiction also disposes of so much of the motion as is addressed to the subject of venue. See Miles v. Illinois Central Railroad Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104.

The doctrine of forum non conveniens is not involved, nor do the motion papers contain any claim of undue burden on interstate commerce.

The motion is denied.

Settle order on notice.