**GENERAL ELECTRIC COMPANY,**
Plaintiff,

v.

**CENTRAL TRANSIT WAREHOUSE COMPANY,** Kansas City Terminal Warehouse Company, and Chicago Great Western Railway Company, Defendants.

No. 9387.

United States District Court,
W. D. Missouri, W. D.

Jan. 22, 1955.

On Rehearing Feb. 14, 1955.

Roy P. Swanson and Charles B. Blackmar of Blackmar, Eager, Swanson, Midgely & Jones, Kansas City, Mo., for plaintiff.

Frank H. Terrell of Terrell & Taylor, Kansas City, Mo., and Hubert Jones of Evans, Duncan, Jones, Hughes & Riley, Des Moines, Iowa, for defendants.

WHITTAKER, District Judge.

This matter is now before me upon (1) the separate motion of defendant, Central Transit Warehouse Company, to quash the return of service of process purporting to have been had upon it (because of its claim that, at the time of the institution of this suit, it was not "present" or "doing business" in this district, so as to render it amen-

able to service of process in this district), and to dismiss this action as to it for lack of venue (because of its similar claim that it is not "doing business" in this district in the sense of the venue statute, Section 1391, Title 28 U.S.C.A.), and for a more definite statement, and (2) the separate motions of all three defendants to transfer the cause to the District Court of the United States for the Northern District of Iowa, as a more convenient forum for its trial, under the doctrine of Forum Non Conveniens and the provisions of Section 1404(a), Title 28 U.S.C.A.

The attack made by Central Transit Warehouse Company (hereinafter called Central Transit) upon jurisdiction over its person, and upon venue, present, substantially, the same question—as both are dependent upon whether that defendant is "doing business", in this district —and those attacks will be considered together and decided first.

Plaintiff, a New York corporation, has filed a complaint, in five counts, seeking, in Count I, a judgment against Chicago Great Western Railway Company, only (hereinafter called "CGW"), in Count II, a judgment against Central Transit only, in Count III, a judgment against Kansas City Terminal Warehouse Company, only (hereinafter called "Terminal"), in Count IV, a judgment (upon an alleged warranty or guaranty of payment of the liabilities of Central Transit) against Terminal, alone, and in Count V, a judgment against any one or more of the three defendants who may be found liable, in the amount of $36,372.-32, as damages to a large number of plaintiff's refrigerators and freezers suffered in shipment over the lines of defendant, CGW (or at least it was the delivering carrier) from plaintiff's manufacturing plant in Erie, Pennsylvania, to Oelwein, Iowa, or suffered while being unloaded into, and stored in, the warehouse of defendant, Central Transit, and (it is claimed also) of defendant, Terminal, at Oelwein, Iowa.

Summons was issued by the Clerk for defendant, Central Transit, and, with a copy of the complaint, was served by the Marshal, pursuant to Rule 4(d) (3) of Federal Rules of Civil Procedure, 28 U.S.C.A. and he afterward made the following return:

"I hereby certify and return that on the 7th day of October, 1954, I received this summons and served it together with the complaint herein as follows: By delivering two true copies thereof to the within named Central Transit Warehouse Company, a corporation, individually and as agent for Kansas City Terminal Warehouse Company, and the Kansas City Terminal Warehouse Company, both located at 933 Mulberry, Kansas City, Missouri, on the 14th day of October, 1954, by serving Robert R. Lester, personally, as directed by plaintiff's attorneys."

As stated, defendant, Central Transit, by its motion to quash and to dismiss, challenges, both, the sufficiency of that service to give the Court jurisdiction over its person, and the venue of the court of this action, but only upon the special ground that it was not "doing business" in this district at the time of the institution of this suit or at the time of said service of process.

In support of its motions, Central Transit has filed the affidavit of Mr. Robert R. Lester, and plaintiff, in opposition to the motion, has taken, and filed herein, several depositions, particularly, the depositions of Robert R. Lester and S. Bert Town.

This material shows that Terminal is a Missouri corporation and maintains its chief office at 933 Mulberry Street, in Kansas City, Missouri, where it is engaged in the public warehouse business; that Robert R. Lester is its President and chief managing officer; that until January 1, 1951, Terminal leased (from CGW), and operated, the warehouse, in question, located at Oelwein, Iowa, but, because the name "Kansas

City" did not attract business in that area, Terminal, on or about the date mentioned, caused Central Transit to be incorporated under the laws of Iowa, and the latter, thereupon, leased (from CGW), and since has operated, the warehouse at Oelwein, Iowa; that all of the capital stock of Central Transit is owned by Terminal.

That Terminal has another affiliated warehouse company, known as Midland Warehouse Company (hereinafter called "Midland"), which is licensed to do, and is doing, business at Oelwein, Iowa.

That Central Transit has no directly employed employees in Iowa, but uses, for its physical work at Oelwein, laborers, and an "office manager" (Mrs. O'Hara), who are directly employed by Midland, and Central Transit periodically reimburses Midland for that service.

The officers of Central Transit are Robert R. Lester, President, and Treasurer, S. Bert Town, Vice-President, and Frank H. Terrell, Secretary, and they all live in Kansas City, Missouri, and, except for Mr. Terrell, who is a Kansas City lawyer, they are, principally, employed as the managing officers of Terminal, maintaining their offices in Terminal's facilities at 933 Mulberry Street, in Kansas City, Missouri.

That Central Transit has no formal, or clearly admitted, office in Missouri, but that Midland maintains an office at 1212 Waldheim Building in Kansas City, Missouri, which is a small office with only two women and, apparently, one man (Mr. Gregg) in it; that Central Transit uses that office as its Kansas City address. On that score Mr. Lester testified "When we needed to have a Kansas City address, we gave that as an address." Central Transit uses a letterhead stating "1212 Waldheim Building" to be its Kansas City, Missouri address, but its name is not on the door of that office.

That Mr. Lester and Mr. Town are the only directly employed employees of Central Transit, and its chief managing officer is Mr. Lester, who operates from his office in Terminal's facilities, at 933 Mulberry Street in Kansas City, Missouri, except that he makes a trip to Oelwein, Iowa, about every three months, and that, under Mr. Lester, the person primarily in charge of the Oelwein operation for Central Transit is Mr. Town, who also maintains his office at 933 Mulberry Street, in Kansas City, and spends about two days per week in Oelwein; that Mr. Town, when not in Oelwein, communicates with Mrs. O'Hara, the "office manager" (directly employed by Midland), at Oelwein, and she with him, at Kansas City, Missouri, by telephone, memoranda and correspondence; that frequently such, and other, correspondence for Central Transit is directed to, and received at, 1212 Waldheim Building, Kansas City, Misssouri, to avoid "confusion", and all Central Transit mail received there is referred to Mr. Town at 933 Mulberry Street.

That one-seventh of Mr. Lester's salary is paid by Central Transit and the balance is paid by Terminal and other affiliated warehouse companies. The record does not show what percentage of Mr. Town's salary is paid by Central Transit.

That both Mr. Lester and Mr. Town, at 933 Mulberry Street, conduct correspondence for Central Transit, solicit business and quote rates for it, and they each maintain correspondence files for it at that place, and all loss and damage claims against Central Transit are referred to, and handled by, Mr. Lester at that place, and, apparently, Mr. Lester there makes contracts for Central Transit, at least the CGW lease covering the Oelwein warehouse was negotiated and executed by him in Kansas City.

That, apparently, Midland conducts some correspondence for Central Transit at 1212 Waldheim Building because Mr. Lester testified that Central Transit pays Midland $65 per month for services of the Waldheim Building stenographic staff and for forwarding mail addressed to Central Transit. It also appears that the general ledger of Central Transit is kept and maintained at 1212 Wald-

heim Building where a bookkeeper (Mr. Gregg), employed and paid by Terminal, posts the general ledger from original entries prepared at Oelwein and forwarded by Mrs. O'Hara, and, for this service, Central Transit pays Terminal $100 per month.

It clearly appears that not only are all of the officers of Central Transit residents of, and permanently based and performing the major part of their work for Central Transit, in, Kansas City, but, in addition, all of its directors (Mr. Lester, Mr. Terrell, Mr. Raymond, Mr. Dean, and Miss Ridenour) are citizens and residents of Kansas City, Missouri, and all of the directors' meetings of the company are held in Kansas City (at the office of Mr. Terrell, who is Secretary of, and counsel for, the company), and its By-Laws, corporate minutes, stock book, and at least a duplicate corporate seal, are kept and maintained in Kansas City, at Mr. Terrell's office; and, in addition to the general ledger of the company being kept, posted, and maintained, in Kansas City (at 1212 Waldheim Building), the company has a bank account in Kansas City (as well as a more active one at Oelwein), and maintains a check book at Kansas City where, in usual course, checks in payment of the company's obligations are written and signed by Mr. Lester, but, occasionally, Mrs. O'Hara, who is also authorized to sign checks, will issue and sign a check at Oelwein, Iowa, when Mr. Lester is not available.

These are the facts upon which the questions of personal jurisdiction over, and venue as to, defendant, Central Transit, must depend.

■■ The formula of "presence", or of "doing business", in the district are but convenient phrases for discussion and analysis, Pickthall v. Anaconda Copper Mining Co., D.C.S.D.N.Y., 73 F.Supp. 694, and the real question—never subject to exact specification, but always dependent upon the facts of the particular case—is whether the challenged service so offends traditional notions of fair play as to amount to a denial of due process. International Shoe Company v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In actions pending in a state court, or removed, after service, to a Federal court, on the ground of diversity, the question —absent assertion by the state of process powers contravening the Federal constitutional concept of due process—is one of local state law. Doyle v. Southern Pacific, D.C.Mo., 87 F.Supp. 974; Kelley v. Delaware L. & W. Ry. Co., 1 Cir., 170 F.2d 195, Canvas Fabricators, Inc., v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485. Otherwise the question is a general or Federal one of constitutional due process. International Shoe Company v. State of Washington, etc., supra. However that matter is of no real moment here, because, on the facts present, the Missouri law is like the general law and establishes, on those facts, that defendant, Central Transit, is "doing business" in this district, and is subject to our process and venue.

■ This is so because of its above-described general activity here, but particularly because of the fact that its executive officers, continuously and systematically, serve, direct, supervise and control the major part of its activities from their offices in Kansas City, and because its directors' meetings are all systematically and regularly, held in Kansas City, and its corporate records, such as its By-Laws, corporate minutes, stock book, duplicate seal, and general ledger, are kept and maintained in Kansas City, where it also has a bank account and keeps one of its check books, and where checks, in payment of its obligations, are commonly issued and signed by Mr. Lester.

The St. Louis Court of Appeals has held that this kind of activity constitutes the doing of business, and that "it is not only the physical but the mental work of these officers and agents that must be relied on for the successful direction of the affairs of a corporation, and the exercise of these acts by these officers and agents, is just as much a

part of the operations of the corporation —part of the doing of business by the corporation—as is the mechanical or industrial work in which it is engaged." Stegall v. American Pigment & Chemical Co., 150 Mo.App. 251, 130 S.W. 144, 155. Such is also the general law. On facts somewhat similar to those here, Judge Medina, in Pickthall v. Anaconda Copper Mining Co., D.C.S.D.N.Y., 73 F.Supp. 694, 698, determined the point in this language:

"Where, pursuant to undoubted authority, the officers of a foreign corporation regularly and systematically, year in and year out, manage the affairs of the corporation and determine its policies within the district, and where the functions of the Board of Directors are performed with similar regularity, there would seem to be little basis for holding that the corporation is not doing business in the district, simply because the ministerial acts of the corporations' agents and employees are performed elsewhere."

To the same effect are the cases of Olympic Radio & Television, Inc., v. Hazeltine Research, D.C.E.D.N.Y., 85 F. Supp. 579, and Goldberg v. Southern Builders, Inc., 87 U.S.App.D.C. 191, 184 F.2d 345.

Under the facts and the law I am compelled to, and do, hold that defendant, Central Transit, is "doing business" in this district, and is subject to our process and venue, and its motion to quash return of service, for lack of "presence", and to dismiss, for lack of venue, must be, and it is hereby, denied.

■ That part of Central Transit's motion seeking a more definite statement, asks that plaintiff be required to say whether the contract between it and the plaintiff for the storage of the refrigerators and freezers at Oelwein, Iowa, was oral or in writing. In the circumstances here, I believe that matter is not an ultimate essential fact, but is evidentiary, and should be obtained through discovery.

Having determined that Central Transit is "doing business" in this district and is subject to our jurisdiction and venue in this action, I must now consider and determine the "conditional" motion (conditioned for consideration only if its attack upon jurisdiction and venue be overruled) of Central Transit, and the motion of Terminal, "joined in" by CGW, to transfer this cause to the District Court of the United States for the Northern District of Iowa under the provisions of Section 1404(a), Title 28 U.S.C.A.

In support of the motions Central Transit has filed an affidavit, and supplemental affidavit, made by its Vice-President, S. Bert Town, and CGW has filed an affidavit made by its Vice-President, E. T. Reidy. In opposition to the motion plaintiff has filed the depositions of Robert R. Lester and S. Bert Town.

The Town affidavits, in substance, say that Central Transit operates a public warehouse at Oelwein, Iowa; that 15 to 20 persons were employed by it in the unloading and storing at Oelwein, of these refrigerators, all of whom then lived at Oelwein; that all but 12 of those persons have moved from Oelwein to places now unknown to affiant, but of the 12 who still live in Oelwein only 5 are now employed by Central Transit, and that it desires to have the 12 employees and former employees who still reside at Oelwein present to testify at the trial of this cause, and that they will testify that no damage occurred to the refrigerators while being unloaded or stored by Central Transit at Oelwein. The Reidy affidavit recites, in substance, that the refrigerators moved, on divers dates, from January through May of 1952, in many trains and in 136 different railroad cars, from Erie, Pennsylvania, to Chicago, Illinois over the lines of other carriers, and from Chicago to Oelwein, Iowa, over the lines of CGW; that none of the shipments moved into or through Missouri or this district; that the employees of CGW, or a great majority of them, who were engaged in trans-

porting the shipments over its lines from Chicago to Oelwein live either in Oelwein or in Chicago; that it would be disruptive to the business of CGW to transport those employees to this district for trial of this case; that upon arrival of the shipments at Oelwein they were delivered to Central Transit at its warehouse in Oelwein, and were there unloaded by employees of Central Transit; that it will be necessary to produce those employees of Central Transit as witnesses at the trial of this cause "to establish the condition of said refrigerators and freezers at the time of the delivery thereof by this defendant to said Central Transit Warehouse Company", and that affiant believes that those employees of Central Transit live in or near Oelwein and outside the jurisdiction of this court.

The Lester and Town depositions show, in addition to the matter set forth earlier herein, that the defendant, Terminal, a Missouri corporation, is not licensed or authorized to do, and is not doing, any business in Iowa, and has no office nor agent in that state upon whom service of process could be had.

Industrious counsel, on both sides, have filed extensive briefs in which, while taking some note of Section 1404(a), Title 28 U.S.C.A. they treat with the matter as though the question were one solely of whether this, or the Northern District of Iowa, is the "more convenient forum" for the trial, and that the whole matter is within the sound discretion of the Court under the facts.

Defendants, in support of the motion to transfer, cite, and endeavor to apply, many cases which they claim establish that the more convenient forum is the Northern District of Iowa,[1] and, on the other hand, plaintiff argues, and cites many cases which it claims hold on the facts here, that this forum is equally convenient, or, at least, that defendants have not shown such balance of inconvenience as would destroy plaintiff's "personal privilege" of selecting this forum.[2]

But I am convinced, first, that the question is not whether this, or the Northern District of Iowa, is the "more convenient forum", and, second, that the matter is controlled by positive law and that I have no discretion in the matter. This is so because of the express provisions of Section 1404(a), Title 28 U.S. C.A. and the admitted fact that the defendant, Terminal, a Missouri corporation, is not licensed or authorized to do, and is not doing, any business in Iowa, and has no office or agent in that state upon whom service of process could be had.

Section 1404, Title 28 U.S.C.A., provides: "For the convenience of parties and witnesses, in the interest of justice,

---

1. The cases principally relied upon by them are Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; B. Heller & Co. v. Perry, 7 Cir., 201 F.2d 525; Nicol v. J. C. Penney Co., D.C.E.D. Mich., 97 F.Supp. 83; and same case on appeal, Nicol v. Koscinski, 6 Cir., 188 F. 2d 537; Richer v. Chicago, R. I. & P. R. Co., D.C.E.D.Mo., 80 F.Supp. 971; and McKeen v. Union Pacific R. Co., D.C.W. D.Mo., 111 F.Supp. 876.

2. The cases principally relied upon by it are Ford Motor Company v. Ryan, 2 Cir., 182 F.2d 329; Mason v. Chicago, R. I. & P. R. Co., D.C.W.D.Mo., 96 F.Supp. 361; Masterpiece Productions v. United Artists Corp., D.C.E.D.Pa., 94 F.Supp. 116; Sherman v. Baltimore & Ohio R. Co., D.C.W.D.Pa., 122 F.Supp. 492, and, upon the matter of defendant's burden to designate the witnesses and the general nature of their testimony and to show the greater importance, rather than the greater number, of witnesses, the cases of Cox v. Pennsylvania R. Co., D.C.S. D.N.Y., 72 F.Supp. 278; Jenkins v. Wilson Freight Forwarding Co., D.C.S.D. N.Y., 104 F.Supp. 422; Skultety v. Pennsylvania Ry. Co., D.C.S.D.N.Y., 91 F. Supp. 118; Strypek v. Shreyer, D.C.S.D. N.Y., 118 F.Supp. 918; and Robbins Music Corp. v. Alamo Music, Inc., D.C. S.D.N.Y., 119 F.Supp. 29, and, upon the issue that proximity of witnesses to the place of trial is not a controlling factor, the cases of Perry v. Atchison, T. & S. F. Ry. Co., D.C.N.D.Cal., 82 F.Supp. 912; Banachowski v. Atlantic Refining Co., D.C.S.D.N.Y., 84 F.Supp. 444, and Lucas v. New York Central Ry. Co., D. C.S.D.N.Y., 88 F.Supp. 536.

a district court may transfer any civil action to any other district or division *where it might have been brought.*" (Emphasis mine.)

■ "By virtue of these limitations, the transfer of any cause from one district to another is a question of power. No District Court has such inherent authority. There must be an express statutory grant as a condition precedent to the initiation of the transfer. Furthermore, every essential factor must be present or the District Court to which the papers are sent will not acquire jurisdiction." United States v. 11 Cases, etc., D.C.D.Or., 94 F.Supp. 925, 926. Statutory authority to transfer an action to a district or division "where it might have been brought", certainly does not authorize transfer to a district where the action might *not* have been brought.

■ It follows that the first question —and, I think, the determinative question—here, is whether this action "might have been brought" in the District Court of the United States for the Northern District of Iowa. The word "brought", as used in the statute, is not synonymous with the word "commenced" in the sense used in Rule 3 of Federal Rules of Civil Procedure, as the phrase "where it might have been brought", as used in the statute, contemplates a forum having venue and in which jurisdiction of the parties could be acquired if the action were originally brought there. In Greve v. Gibraltar Enterprises, D.C.N.M., 85 F.Supp. 410, 412, the court answered the point in this way. "First, the Court believes the language of the statute, 'where it might have been brought', relates primarily to venue and in a proper case would include jurisdiction. It concerns plaintiff's right to institute the suit originally." Judge Learned Hand, in Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949, decided the point in the same way. He said, at page 951: "We do not forget that an action is 'commenced' when the complaint is filed; and it would follow, if it is 'brought' whenever it is 'com-

menced,' that the plaintiff is right. The inference is, however, unwarranted that Rule 3 meant to assimilate the filing of a complaint to the service of a summons." He concluded that the right to transfer an action " 'presupposes at least two forums in which the defendant *is amenable to process.*' " (Emphasis mine.) Judge Fee, in United States v. 11 Cases, etc., supra [94 F.Supp. 927] decided the question in the same way, saying, in an action which could not have been originally brought in the district to which he was asked to transfer it, for want of venue and jurisdiction, the following: "Since no statutory provision exists, this Court is without power to initiate the transfer." To the same effect is Burns v. Chubb, D.C.E.D.Pa., 99 F.Supp. 581.

It is quite true that that part of this action which is embraced in Count I of the complaint, and which seeks relief only against defendant, CGW, could have been "brought" in the Northern District of Iowa, and, likewise, that part of this action which is embraced in Count II of the complaint, and which seeks relief only against defendant, Central Transit, could have been "brought" in the Northern District of Iowa; but that part of this action which is embraced in Counts III and IV of the complaint (which seek relief only against defendant, Terminal), and that part which is embraced in Count V of the complaint (which seeks relief against all three defendants "or against any one or more of them as the facts may warrant") could not have been "brought" in the Northern District of Iowa for the simple reason that defendant, Terminal, is a Missouri corporation and not licensed or authorized to do business, and is not "doing business", in Iowa, and the District Court for the Northern District of Iowa would not have had venue of the action, over defendant, Terminal, Section 1391(c), Title 28 U.S.C.A., nor, (for those reasons, and the fact that defendant, Terminal, has no office nor agent in Iowa upon whom

service of process could be had), could that court have acquired jurisdiction over the defendant, Terminal. The fact that Central Transit, which is incorporated and doing business in Iowa, is a wholly owned subsidiary of defendant, Terminal, does not render that subsidiary a valid process agent in Iowa for defendant, Terminal. Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900.

This is one "action". I cannot divide it into parts and transfer some and keep others.

For these reasons, this "action" could not have been "brought" in the District Court of the United States for the Northern District of Iowa, and, therefore, Section 1404(a), Title 28 U.S.C.A., does not authorize, but, on the contrary, prohibits, the transfer of this action to that jurisdiction.

It is, therefore, Ordered and Adjudged by the Court that the motion of defendant, Central Transit Warehouse Company, to quash return of service and to dismiss this action, be, and it is hereby denied, and that its motion for a more definite statement be, and it is hereby, denied, and that the separate motions of defendants to transfer this action to the District Court of the United States for the Northern District of Iowa, should be, and they are hereby, denied.

### Memorandum and Order On Defendant's Motion For Rehearing

Defendants have moved for a rehearing in respect of that portion of our memorandum and order of January 22, 1955, which denied their separate motions to transfer this cause to the District Court of the United States for the Northern District of Iowa, under the provisions of Section 1404(a), Title 28 U.S.C.A. contending, first, that the effect of the motion by defendant, Terminal, to transfer was to give its "consent" to the *venue* of the Northern District of Iowa, and, they argue, that such "consent" not only eliminated any question of venue in the transferee court, but, also, was sufficient to give *personal juris-*

*diction* to that court over the defendant, Terminal, and that any question respecting the phrase in that section limiting transfer to a district wherein the action "might have been brought" is thereby overcome, citing Paramount Pictures v. Rodney, 3 Cir., 186 F.2d 111, Anthony v. Kaufman, 2 Cir., 193 F.2d 85, Welch v. Esso Shipping Co., D.C.S.D.N.Y., 112 F. Supp. 611, and Mire v. Esso Shipping Co., D.C., 112 F.Supp. 612, and contending, second, that under the averments of plaintiff's complaint, particularly Counts III and V (alleging that Terminal operates the Oelwein, Iowa, warehouse "in the name of its agent", Central Transit, and that the latter, in and about the handling, storage and damaging of these chattels, acted as "the agent of defendant", Terminal, and that the two "are one and the same", and that Central Transit is "a mere adjunct, branch or instrumentality of" Terminal), this action "might have been brought" against defendant, Terminal, in the Northern District of Iowa, and that the matter of power in the court to transfer the cause thereto, under Section 1404(a), Title 28 U.S.C.A. should be determined upon the averments of plaintiff's complaint—which have not (as yet) been controverted by defendants, and which plaintiff is in no position to controvert—, and that the court should not attempt to resolve those tendered issues upon a motion to transfer.

We now give attention to the first question presented. The crux of our holding, stated in the last page of our opinion, was that this action could not have been brought in the Northern District of Iowa against defendant, Terminal, because that court "would not have had venue of this action over defendant, Terminal, nor could that court have acquired jurisdiction over the defendant, Terminal", and, therefore, the action could not have been brought in that district.

We recognize, of course, that venue can be waived. So can jurisdiction over the person be waived. But does such a waiver of either or both—

made *after* an action has been "commenced" (by the mere filing of a complaint with the clerk *in any district*, see Fed.Rules Civ.Proc. Rule 3, 28 U.S.C.A.) —establish that the action "might have been brought" there, in the sense of that phrase as used in Section 1404(a), Title 28 U.S.C.A.? If it does, what, if any, meaning is left to the phrase "where it might have been brought", as adopted by Congress and used in the statute? Would not such construction be to read that phrase entirely out of the statute? Would not such construction permit transfer of the action to *any district desired by the moving defendants*, though they, or some of them, could not have been served with process there, and no statutory venue existed there, and the action could not have been *maintained* there, without their intentional waiver of venue and entry of general appearance? I think no such treatment can be given to that phrase in the statute. It, says Judge Learned Hand, "'presupposes at least two forums in which the defendant is amenable to process.'" Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949, 952.

We recognize that the third circuit, in Paramount Pictures v. Rodney, 3 Cir., 186 F.2d 111, held—over two strong dissents—, in an antitrust case, that defendants' motion to transfer waived lack of venue in the transferee district, and, of course, it did, but did that subsequent waiver relate back, antecedently, to the time of the institution of the suit so that it can be said to have affected the matter of whether the action "might have been brought" in the transferee district? The majority held so. I agree with the dissents and think not. But, in any event, that case does not hold that an action may be transferred to a district where there is neither venue nor amenability to process. Being an antitrust case, it was subject to both the venue and process provisions of Section 12 of the Clayton Act, Section 22, Title 15 U.S.C.A., which provides that "any suit * * * under the antitrust laws against a corporation may be brought

not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business", (this much, of course, deals only with venue) "and all process in such cases may be served in the district of which it is an inhabitant, *or wherever it may be found*" (the last sentence, of course, deals with service of process). Thus, while a corporate defendant, in such a case, may object to (or it may waive) venue over it, if it is not an inhabitant of or found in or doing business in, the district of suit (as several of the corporate defendants in that case were not—but the majority of the court held that their motion to transfer constituted a waiver of venue *sufficient to satisfy the terms of Section 1404(a), Title 28 U.S.C.A.*), yet, no question of amenability to process of the transferee court existed or could exist in that case, because the corporate defendants were, by virtue of the last sentence of Section 12 of the Clayton Act, subject to extraterritorial service of process "wherever it (they) may be found." This was carefully pointed out by Judge Biggs.

We note that in Anthony v. Kaufman, 2 Cir., 193 F.2d 85, 86, Judge Frank said "But here, one defendant could have been served in the transferee district, while the other defendant, which could not there have been served, has joined in the application for, and thus consented to, the transfer. That consent *is a* waiver of lack of venue". We agree that the motion to transfer was "a waiver of lack of venue", but we doubt that the waiver had any effect on the antecedent matter of whether the action "might have been brought" in the transferee district. But, however that may be, we do not believe that a waiver of venue establishes that an action "might have been brought" in a district where there was not only no statutory venue, but, moreover, where the defendant could not have been served with process.

The opinions in Welch v. Esso Shipping Co. and Mire v. Esso Shipping Co., supra, cite and rely upon Paramount

Pictures, Inc. v. Rodney, supra, and Anthony v. Kaufman, supra, but we believe they misapply the law of those cases, particularly the Paramount Pictures case, and we respectfully disagree with them.

We adhere to our original conclusion that a district court is without power to transfer a cause, under Section 1404 (a), Title 28 U.S.C.A., to a district without statutory venue and wherein service of process could not have been had and involuntary personal jurisdiction acquired, because, under these circumstances, the action could not have been "brought" in that district.

 But I am convinced we were wrong in our opinion of January 22 in looking to the affidavits and depositions presented by plaintiff in connection with the motion of Central transit to quash service had upon it and in connection with the motions to transfer, rather than to the averments of plaintiff's complaint, for the facts as to whether the defendant, Terminal, was subject to the venue of, and to service of process in, the Northern District of Iowa, and, hence, as to whether this action "might have been brought" against it in that district.

 Plaintiff's complaint clearly alleges, especially in the third and fifth counts, that Terminal operates the Oelwein, Iowa, warehouse "in the name of its agent", Central Transit, and that the latter, in and about the handling, storage and damaging of plaintiff's refrigerators, acted as "the agent of defendant", Terminal, and that the two "are one and the same" and that Central Transit is "a mere adjunct, branch or instrumentality", of Terminal. These are the allegations of the plaintiff, which here resists the motion to transfer. Defendants have not, as yet at least, controverted those averments (except insofar as officers of Terminal and of Central Transit have testified, in depositions taken by plaintiff and filed herein—really upon Central Transit's motion to quash service—, that Terminal, a Missouri corporation, is not authorized to do and is not doing business, and has no office or agent, in Iowa), and plaintiff should not be permitted, upon this motion to transfer, to controvert the averments of its own complaint. Those averments present justiciable issues to be litigated in the case, and upon resolution of which the liability of Terminal, in part at least, depends, and those issues ought not to be summarily determined, collaterally, upon this motion to transfer. If, upon a trial, plaintiff prevails upon those issues of agency, which it has tendered, it will follow that Terminal is doing business in the Northern District of Iowa, and subject to statutory venue and amenable to process there, and that this action "might have been brought" there, and in this view, which I am now satisfied is correct, the court does have power, under Section 1404(a), Title 28 U.S.C.A., and the averments of plaintiff's complaint, to transfer this action to the Northern District of Iowa for trial.

 This brings us back to the merits of the motion to transfer. The damage to the chattels in question occurred either in transit from Erie, Pennsylvania to Oelwein, Iowa or while being unloaded and stored at Oelwein, Iowa. The crews of defendant, CGW, which handled the numerous shipments involved, reside either in Oelwein, Iowa or in Chicago. The employees of the warehouse company defendants who handled the goods reside in or near Oelwein, Iowa. Some of them are no longer employed by the warehouse companies, yet those companies say that those persons will be needed as witnesses. They will be subject to the process of that court but not of this one. The law of Iowa will control, at least, certain aspects of the case. The law of Missouri is not involved. None of the goods were ever in this district. No element of the cause of action arose here, save plaintiff's claim that defendant, Terminal, is legally liable for the obligations of defendant, Central Transit, under a claimed guaranty, but that issue is quite collateral to the main issue in the case, which is legal liability for the damage, and that

**828**

issue of liability must be determined before the collateral issue mentioned will arise.

Upon consideration of the entire situation we believe that plaintiff's "personal privilege" of selecting the forum is thus overcome, and that it would be for the convenience of the parties and witnesses and in the interest of justice to transfer this cause to the District Court of the United States for the Northern District of Iowa for trial.

It is, therefore, ordered and adjudged by the court that defendants' motion for rehearing should be, and it is hereby, sustained, and it is further ordered that this action be, and it is hereby, transferred to the District Court of the United States for the Northern District of Iowa for trial.