**Richard A. LIGHTNER, Plaintiff,**

v.

**PILGRIM PAPER CORP., a corporation of Pennsylvania and Irving Jacklin and Seymour Jackowitz, Defendants.**

United States District Court
S. D. New York.

June 26, 1957.

Baker, Garber & Chazen, Hoboken, N. J., Bernard Chazen, Hoboken, N. J., of counsel, for plaintiff.

Barry, Treanor, Shandell & Brophy, New York City, Joseph J. Brophy, New York City, of counsel, for defendant Pilgrim Paper Corp., appearing specially for purposes of this motion and for no other purpose.

LEVET, District Judge.

The defendant Pilgrim Paper Corp. has moved to dismiss this action on the ground that this court has no jurisdiction of such corporate defendant since it is not doing business within the State

of New York or within the Southern District of New York.

Prior to the making of the present motion, the defendants, including Pilgrim Paper Corp., stated that they appeared specially for the purpose of a motion which they made for an order, among other things, "transferring the venue of this action from the United States District Court, Southern District of New York, to the appropriate District Court of the United States in Pennsylvania, pursuant to 28 U.S.C.A., Section 1404, Subdivision (a)" and for an extension of the time for said corporate defendant to appear and answer. The motion to transfer venue was denied. The defendant was given twenty days to answer or move with respect to the complaint, and the order denying the motion to transfer stated that it was made without prejudice to the defendants to make any other motion directed to the complaint.

The jurisdictional facts with respect to the corporate defendant as elicited from a deposition of its president, Irving Jacklin, are as follows:

The Pilgrim Paper Corp. was incorporated in Pennsylvania and has its main office and plant in Philadelphia, Pennsylvania. It is engaged in the business of jobbing in paper, that is, buying paper and reselling it, buying corrugated cartons, tissue paper, sealing paper, etc., and reselling the same. It has four or five employees in the Philadelphia plant, two in the office and three salesmen.

Jacklin resides in Great Neck, Long Island, New York. He is consulted on hiring and firing; he tells the plant where to order its merchandise; he gives instructions to the plant, which he visits perhaps three or four times a year, mainly for "criticism," spending just a few hours each visit. Seymour Jackowitz, his brother, is vice president and secretary, living in Woodmere, Long Island, New York, and going to Philadelphia no more than the president, with like stays and purposes.

In New York City, Irving Jacklin, Seymour Jackowitz and Armand Lewin operate Merchant Suppliers Company (hereinafter called "Merchant"), a partnership, at 447 West 18 Street. This partnership engages in a similar business to Pilgrim, handling the same type of items as Pilgrim, but it manufactures none of its items in New York. Fifty per cent of Pilgrim's supplies come from Merchant and fifty per cent from other sources.

Irving Jacklin makes the "set ups" and the Philadelphia plant purchases according to his instructions originating from New York. When Pilgrim's "perpetual inventory" of stock runs low it calls New York, and Merchant sends the needed items by truck from its supplies.

Pilgrim has a checking account in a Philadelphia bank. It has no certificate to do business in New York and its accounts are cared for by a New York accounting firm, which works both in Philadelphia and New York and which serves both Pilgrim and Merchant. When in New York, as Jacklin said, the accountants "do it down in Pilgrim and at the Merchant Suppliers." Jacklin receives a copy of all Pilgrim sales and keeps a file of these at 447 West 18 Street, where he looks them over and decides upon appropriate supervision. If Pilgrim sells to an account in New York, Merchant ships and bills directly. The salesmen are not salaried, so no cross-credits are necessary for such sales.

At the end of the month Jacklin receives the statement of sales and expenses in New York. The bank check vouchers are mailed to New York and kept there. The checks for accounts payable are drawn and signed in New York. The payroll checks and expense checks are written in Philadelphia. Sometimes purchase orders for Pilgrim are written in New York, but infrequently; usually large orders are sent directly to a mill in New Hampshire. The defendant corporation has no bank account in New York and is not listed in any New York telephone directory. The corporation is a personally-held one. Jacklin, without benefit of any formal meetings of the Board of Directors, decides policy.

The defendant Pilgrim Paper Corp. claims these facts are insufficient on which to base jurisdiction under Title 28 U.S.C.A. § 1391(c). The plaintiff claims that the foregoing facts are sufficient to support jurisdiction in New York and that, in any event, defendant, by moving for a change of venue, waived its right to object to the question of jurisdiction over its person.

■ The question of what constitutes "doing business" in a state depends upon the facts of each case. As was stated by Judge Medina in Pickthall v. Anaconda Copper Min. Co., D.C.S.D.N.Y. 1947, 73 F.Supp. 694:

"The tests of whether or not a foreign corporation has engaged in such activities in the district as will make it subject to service of process there are necessarily vague and general. The formula of 'presence' within the district or that of 'doing business' in the district are merely convenient phrases which serve largely for purposes of classification and discussion. Any more explicit formulation of doctrine would inevitably serve as a pattern of evasion. As has been held again and again, each case must rest upon its own bottom, and be decided according to its own peculiar facts." At page 697.

■■ Although formal meetings of the Board of Directors of the defendant Pilgrim Paper Corp. are not held, the continuous supervision and control exercised by its officers and directors in New York are such that the challenged service does not offend traditional notions of fair play. Thus, in Pickthall v. Anaconda Copper Min. Co., supra, the court held that the continuous exercise of a corporation's important executive functions in this district supported a claim that it was doing business here so as to render it amenable to suit. The point was determined in the following language:

"* * * Where, pursuant to undoubted authority, the officers of a foreign corporation regularly and systematically, year in and year out, manage the affairs of the corporation and determine its policies within the district, and where the functions of the Board of Directors are performed with similar regularity, there would seem to be little basis for holding that the corporation is not doing business in the district, simply because the ministerial acts of the corporation's agents and employees are performed elsewhere. * * *" At page 698.

See also opinion by Justice Whittaker, then District Judge, in General Electric Company v. Central Transit Warehouse Co., D.C.W.D.Mo.1955, 127 F.Supp. 817.

Since the defendant Pilgrim Paper Corp. is, in my opinion, subject to this court's jurisdiction, its motion to dismiss this action is denied. In view of the foregoing determination, the question of the defendant's alleged waiver of jurisdiction by having moved for a change of venue need not be considered.

So ordered.