Joseph J. KANE and John J. Kane, individually, and as stockholders of Central American Mining & Oil, Inc., suing on behalf of themselves and for the benefit of said corporation and all other stockholders of said corporation, Plaintiffs,

v.

CENTRAL AMERICAN MINING & OIL, INC., Robert Guadano, Bernard Guadano, and Fred Menna, Defendants.

United States District Court
S. D. New York.

Nov. 27, 1964.

Marks & Marks, New York City, for plaintiffs; David L. Marks, New York City, of counsel.

O'Brien, Driscoll & Raftery, New York City, appearing specially for defendants; Arthur F. Driscoll, William D. Friedmann, Gabriel Kaszovitz, New York City, of counsel.

WEINFELD, District Judge.

This essentially is a stockholders' derivative action brought on behalf of Central American Mining & Oil, Inc., a Panamanian corporation, hereinafter called CAMO, charging the defendants, who are its principal officers, sole directors and majority stockholders, with fraud, waste, mismanagement and diversion of a corporate opportunity.

The second amended complaint, the subject of the defendants' motion to dismiss, contains three separate counts which are based substantially upon the following allegations:

That plaintiffs, John J. and Joseph J. Kane, are the owners of 58,000 of the more than 7,000,000 shares of common stock issued by CAMO, which was incorporated under the laws of the Republic of Panama; that in 1961, shortly after its incorporation, CAMO acquired, indirectly through a corporate shell controlled by the defendants, a large mineral concession in the Republic of Honduras for a consideration of $40,900 in cash and 1,005,000 shares of its common stock; that by this transaction the defendants improperly arrogated CAMO's corporate opportunity unto themselves; further, that at or about the time the concession was acquired, CAMO issued 2,000,000 shares of common stock to one O. R. Seagraves and 2,000,000 shares to the defendant, Robert Guadano, for which the latter paid no or an inadequate consideration; that thereafter Guadano, to gain control of the corporation and to oust O. R. Seagraves, caused another 2,000,000 shares to be issued to his brother, Bernard Guadano, also a defendant, for which no or an inadequate consideration was paid; that in July 1961 CAMO assigned part of its Honduran concession to Pure Oil Company in return for $450,000 cash ($50,000 of which was held in escrow) and for a share of Pure Oil's profits; that the defendants misappropriated a substantial portion of the $400,000

received on that transaction; and further, that the defendants, corporate and individual, filed with the Securities and Exchange Commission a registration statement covering the public distribution of 7,500,000 shares of CAMO stock, including the Guadanos' 4,000,000, at up to $5.00 per share, and if the registration statement is declared effective, the Guadanos, who acquired their shares for no or an inadequate consideration, will be the main beneficiaries of the distribution, whereas the proceeds should properly accrue to the benefit of CAMO. Additional allegations appropriate to the theory of each separate count are set forth.

The three separate counts are as follows: The first, predicated upon diversity of citizenship, charges violations of the Articles of Incorporation and of Panamanian law. It alleges that the plaintiffs are citizens of the State of Texas, that the individual defendants are citizens of the State of New York, and that the corporation is doing business in that State and has conducted meetings there. The second count alleges liability under Section 10(b) of the Securities Exchange Act of 1934[1] and Rule 10b–5,[2] promulgated thereunder by the Securities and Exchange Commission, jurisdiction resting on Section 27 of the Act.[3] The third count, based upon allegations of the first and second counts, rests upon the doctrine of pendant jurisdiction.

Plaintiffs seek the return to the corporation of the 4,000,000 shares issued to the defendants, Robert and Bernard Guadano, the removal of the three individual defendants from their corporate posts, and an accounting with respect to the sums received in connection with the Pure Oil Company transaction.

The defendants move under Rule 12(b) of the Federal Rules of Civil Procedure for dismissal of the complaint on the following grounds:

(1) lack of jurisdiction over the person of the defendants;

(2) lack of jurisdiction of the subject matter;

(3) improper venue;

(4) insufficiency of service of process;

(5) failure to join an indispensable party; and

(6) failure to state a claim upon which relief may be granted.

In the event of denial of their motion, they further move that plaintiffs post security for expenses and damages pursuant to the New York Business Corporation Law[4] and for costs as nonresident plaintiffs.[5]

The parties have submitted affidavits in support of and in opposition to the motion and that branch which seeks dismissal of the complaint for failure to state a claim is treated as one for summary judgment.[6]

The extensive contentions of the parties, which in some respects overlap, make it desirable initially to consider the second count, the nondiversity and federally based claim, since if it withstands dismissal the disposition of the two remaining counts falls in place.

The principal thrust of the defendants' position, broadly stated, is that CAMO is a Panamanian corporation; that it is not found, present, nor doing business in this State; that even if, contrary to their contention, diversity jurisdiction exists, the basic claim asserted by the plaintiffs involves the internal affairs of a foreign corporation, as to which the New York courts would decline jurisdiction[7] and finally, that New York State, in applying its conflict of laws rule,

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5.

3. 15 U.S.C. § 78aa.

4. N.Y.Business Corporation Law, § 627, McKinney's Consol.Laws, c. 4.

5. N.Y. CPLR § 8501.

6. Fed.R.Civ.P. 12(b).

7. Citing Langfelder v. Universal Laboratories, Inc., 293 N.Y. 200, 56 N.E.2d 550, 155 A.L.R. 1226 (1944); Koster v. Shenandoah Corp., 258 App.Div. 1079, 18 N.Y.S.2d 38 (2d Dep't), leave to appeal denied, 283 N.Y. 778, 27 N.E.2d 819 (1940).

would be guided by the law of Panama, under which plaintiffs were required, but failed, to qualify as contesting stockholders, and accordingly would bar relief.[8]

The plaintiffs, on the other hand, while challenging these contentions, which involve sharply disputed fact issues, contend that in any event the second count states a claim upon which relief may be granted and satisfies subject matter jurisdiction, venue and process requirements.

## I. THE FEDERAL CLAIM

### JURISDICTION

The nub of this claim is that the defendants, in causing CAMO to issue to the Guadanos 4,000,000 shares for no or an inadequate consideration, "employed a device, scheme and artifice to defraud, and engaged in acts which operated and would operate as a fraud and deceit upon the defendant corporation and its stockholders"; that in so doing, the defendants used "means and instrumentalities of interstate commerce and the mails" in violation of Section 10(b) of the 1934 Act.[9] The complaint alleges, in connection with the sale of securities, various acts in violation of the statute and rule as part of the scheme to defraud, as follows: That the defendants used the United States mails (1) to notify stockholders of a special meeting, designed to give defendants control of the corporation, and to facilitate the sale and issuance of stock to themselves for an inadequate or for no consideration, thus depriving the corporation of a valuable asset; (2) to notify stockholders of special meetings held within the Eastern and Southern Districts of New York for the purpose of reporting that the sale and issuance of the aforesaid stock was proper, thus discouraging further objection to the transaction; (3) to send letters to stockholders concerning corporate activities, which letters were designed in part to lull the stockholders into a false sense of security and safety concerning their investments; (4) to file with the SEC a registration statement covering the proposed sale to the United States public of 7,500,000 shares of common stock at $5.00 per share in order to reap substantial profits for themselves which should have inured to the benefit of the corporation.

The defendants' position is that, even though cloaked in the garb of 10(b) violations, the asserted claim is nothing more or less than one involving the internal affairs and management of a Panamanian corporation and the determination of whether the stock issued to the Guadanos was for a proper consideration. Accordingly, they contend that Count II fails to state a claim upon which relief may be granted, their theory being that Section 10(b) and Rule 10b–5 are restricted to fraud in connection with national securities exchanges or with public distributions of stock and were not intended to reach private securities trans-

8. Citing Hausman v. Buckley, 299 F.2d 696 (2d Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962).

9. The Section reads:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 \* \* \* \* \*
 "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j.
 Rule 10b–5, implementing the section, reads:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
 "(1) to employ any device, scheme, or artifice to defraud,
 \* \* \* \* \*
 "(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

actions only incidental to a basic charge of ordinary corporate mismanagement or wrongdoing—in short, that no "Federal question" is presented.

■ This position, and corollary ones, repeatedly urged from the inception of the 1934 Act, have not gained acceptance. It is no longer open to question that a corporation which is fraudulently induced to issue stock for no or inadequate consideration is a defrauded "seller" under the statute;[10] that a shareholder may assert the corporation's claim derivatively,[11] and that as long as the jurisdictional requirements as to the use of the mails and instrumentalities of commerce are properly pleaded as they are in the instant case, it matters not that the securities transaction was private.[12]

■ Accordingly, the Court holds that the statute is properly invoked and that Count II states a claim thereunder. Section 27 of the 1934 Act[13] vests in the Federal courts exclusive jurisdiction of all such suits or actions to enforce any liability or duty created under the Act and the rules and regulations promulgated thereunder. Hausman v. Buckley,[14] strongly pressed by the defendants, where our Court of Appeals, in a diversity case, complied with the forum state's rule against interference in the internal affairs of a foreign corporation, is inapposite. Moreover, the fact that the complaint contains allegations which support a state-created or common law claim against the defendants does not bar the action if it also contains appropriate allegations charging violation of the 1934 Act which, by its terms, permits the maintenance of actions for such violation;[15] and it is also immaterial that the sale or purchase transaction was part of a larger scheme of corporate mismanagement if the other elements of a claim under Section 10(b) are presented.[16] We next turn to the defendants' attack upon Count II on venue and process grounds.

### VENUE

■ The challenge to venue rests in large measure upon the general venue provision, Section 1391 of Title 28, and the defendants' disputed contention that the corporation was not doing business in this district. However, it is not neces-

10. Hooper v. Mountain States Sec. Corp., 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed. 2d 693 (1961); New Park Mining Co. v. Cranmer, 225 F.Supp. 261 (S.D.N.Y. 1963); 3 Loss, Securities Regulation pp. 1770–1771 (1961 ed.). Indeed a purchase of 100 shares, all the outstanding stock of a wholly-owned corporation, in a face to face transaction in which a single telephone call was used as a means of communicating the fraudulent information, was held to come within the ambit of § 10(b), Matheson v. Armbrust, 284 F. 2d 670 (9th Cir. 1960).

11. McClure v. Borne Chem. Co., 292 F. 2d 824 (3d Cir. 1961); Stella v. Kaiser, 82 F.Supp. 301, 310–313 (S.D.N.Y.1948); 3 Loss, Securities Regulation p. 1764 (1961 ed.). Cf. Borak v. J. I. Case Co., 317 F.2d 838 (7th Cir. 1963), aff'd, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (proxy rules).

12. Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953); Baird v. Franklin, 141 F.2d 238 (2d Cir. 1944); New Park Mining Co. v. Cranmer, 225 F.Supp. 261, 267 (S.D.N.Y.1963); Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa. 1946); 3 Loss, Securities Regulation pp. 1770–1771 (1961 ed.). But see Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963) (dictum). Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S. Ct. 1051, 96 L.Ed. 1356 (1952), is not to the contrary, holding only that one who is neither a defrauded seller nor a defrauded buyer may not maintain suit under § 10(b).

13. 15 U.S.C. § 78aa.

14. 299 F.2d 696 (2d Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962).

15. Stella v. Kaiser, 82 F.Supp. 301, 302 (S.D.N.Y. 1948). See Borak v. J. I. Case Co., 317 F.2d 838, 848 (7th Cir. 1963), aff'd, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), expressly declaring the inapplicability of Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), to an action under the 1934 Act.

16. New Park Mining Co. v. Cranmer, 225 F.Supp. 261, 267 (S.D.N.Y.1963).

sary at this point to consider the disputed issue, since Section 27 of the Act[17] contains its own and much broader venue provision which provides that suits may be brought not only in the district where the defendant is found, is an inhabitant, or transacts business, but also in any district where the violation of the Act or any rule and regulation occurred. As already shown, the complaint alleges that acts constituting the violation occurred in this, as well as in the Eastern, district and therefore furnishes a predicate for venue in either district.[18] As the Court of Appeals for the Fifth Circuit said in Hooper v. Mountain States Sec. Corp.: [19]

> "The fraudulent scheme need not be hatched in the forum district. Nor is it necessary that a false or deceptive or fraudulent paper be sent or statement made through the use of the mails * * *.

> "We think that any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient."

Pursuant to the Congressional purpose of providing an accessible forum for imposing the Act's standards upon multistate transactions in securities, telephone calls from the forum district,[20] transmission of written confirmations,[21] and mailings designed to lull the victims of fraud into inaction,[22] all have been held sufficient to support venue—and it is not required that the telephone calls or mailings themselves be fraudulent or deceptive.[23] The shareholders' meeting in this district, arranged by mail, drawing out-of-state shareholders to this district, and with the alleged purpose of securing to defendants the fruits of their fraudulent scheme, is equally adequate and under the allegations of the complaint may be deemed "an important step in the execution of the fraudulent, deceitful scheme or in its consummation."

### SERVICE OF PROCESS

(a) The individual defendants.

Section 27 of the Act contains a further provision which permits extraterritorial service of process "wherever the defendant may be found." As to the individual defendants, there is no basis for quashing service since one defendant was served at his residence in the Eastern District of New York, and the other two were "found" and served in the State of Texas. They contend, however, that service upon them outside the forum district is invalid because the original complaint contained a single count in which jurisdiction was based upon diverse citizenship, and it was only after service of process that the complaint was amended to include the second count based upon Federal subject matter jurisdiction. Their contention must be rejected. Since

17. 15 U.S.C. § 78aa.

18. E.g., meetings of shareholders and directors at Kings Point in the Eastern District on June 22, 1961, and of shareholders at 120 Broadway in this district on December 22, 1961 and January 2, 1962, and mailings of notices to stockholders with respect to such meetings.

19. 282 F.2d 195, 204–205 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

20. E.g., Matheson v. Armbrust, 284 F.2d 670 (9th Cir. 1960); Clapp v. Stearns & Co., 229 F.Supp. 305, 307 (S.D.N.Y. 1964).

21. E.g., Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 204 & n. 12 (5th

Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). In United States v. Cashin, 281 F.2d 669 (2d Cir. 1960), although the Court of Appeals declined to interfere with the District Court's discretionary decision to transfer the case to the district where the fraud was hatched, there is no indication that retention of the case in the district where confirmatory mailings had been made would not have been equally permissible.

22. United States v. Riedel, 126 F.2d 81, 83 (7th Cir. 1942).

23. Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 204 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L. Ed.2d 693 (1961).

the Federal claim under the second count arises out of the same basic facts upon which the diversity charge rests, it "relates back" to the service of the original complaint. Under this circumstance the extraterritorial service was as valid as it would have been had the original complaint, when served, contained the second count.[24] The defendants having appeared, there is no requirement that, upon amendment of the complaint, service of process upon them be effected anew.

(b) The corporation.

█ Service of the summons and complaint upon the defendant corporation made upon its secretary-director, Bernard Guadano, at his residence in the Eastern District of New York, presents a different and more troublesome question. The essence of the attack here is that the corporation was not "doing business" in that, this, or in any other district of the United States. It may be acknowledged that in the strict literal sense this is so, and were the sufficiency of service of process to be gauged by whether CAMO was "doing business" in the Eastern District in the Tauza sense,[25] the defendants' position would have strong support. But that is not the test; we deal here with a built-in venue and process provision of the 1934 Act, which omits any reference to "doing business" and provides:

"Any suit * * * may be brought [in the district where any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

This Court is of the view that the service of process provision of Section 27 is at least as broad as the closely parallel Section 12 of the Clayton Act,[26] construed by the Supreme Court in United States v. Scophony Corp.[27] There the question was whether a British corporation, arguably not "doing business" in New York, nevertheless could be "found" there for process purposes. The Supreme Court concluded that it could, declining to extend to "found" the incrustations and restrictions which had grown up around the "doing business" test, for:

"Even though venue were clearly established, as here, the extension often would make valid service impossible since process could not be issued to run for such corporations to the foreign countries of which they are 'inhabitants.' We are unwilling to construe § 12 in a manner to bring back the evils it abolished, for situations not foreclosed by prior decisions, and thus to defeat its policy together with that of the antitrust laws * * * ."[28]

Section 27 here under consideration has an even broader venue provision than that contained in Section 12 of the Clayton Act in that it also supports venue in the district where the violation occurred. Considering the broad remedial objective of the 1934 Act, it would be an anomaly to expand the venue provision and at the same time to contract service of process

24. MacGowan v. Barber, 127 F.2d 458, 459–460 (2d Cir. 1942); 3 Moore, Federal Practice ¶ 15.15, at 855–856 (2d ed.). See 28 U.S.C. § 1653; Fed.R.Civ.P. 15 (c); International Ladies' Garment Workers' Union v. Donnelly Garment Co., 121 F.2d 561 (8th Cir. 1941); Baldwin v. Pickens, 208 F.Supp. 889 (W.D.S.C. 1962).

25. Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917).

26. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22.

27. 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

28. 333 U.S. at 817, 68 S.Ct. at 866.

amenability. The conclusion is warranted that "found" in Section 27 is to be given at least the same broad content as that accorded it in the Clayton Act.

The defendant is incorporated in Panama and its mining concessions are located in Honduras. However, upon the record here presented there is a paucity of information as to what precisely its corporate activities are outside the Southern and Eastern Districts of New York. It appears that up to the commencement of this action its principal function has been getting off the ground in preparation for the exploitation of its mining and oil concessions, including the raising of necessary capital for that purpose. There is no suggestion that the corporation has sold or promoted the sale of any commodity derived from its mining concessions here, or for that matter, anywhere in the world. When suit was commenced the corporation had been in existence less than three years. The three defendants constituted its entire Board of Directors, were its principal officers and were residents of the Eastern District of New York. They carried on corporate activities in the Eastern District, as well as in this Southern District. One of the three individual defendants is an attorney who rendered legal services in advancing the defendants' interests either in the Eastern or the Southern District, or both. During this three-year period a special meeting of stockholders and a special meeting of directors were held at Robert Guadano's home in the Eastern District, the purpose of which related in part to the subject matter of the complaint; six

months later another special meeting of stockholders, and, within ten days, the annual meeting of stockholders were held at 120 Broadway, New York City, in this district. The notices for these meetings were prepared and mailed from either the Eastern or Southern District of New York. Letters from the officers and directors to stockholders, purporting to keep them informed as to corporate activities, were mailed from the Eastern District and bore a return address there.

During this initial period of the corporation's existence, manifold and important activities were carried on in this and the Eastern District by the defendants' officers and directors in association with accountants, lawyers and others in the preparation of the registration statement, which was filed with the SEC, the purpose of which was to raise capital funds.

The Court concludes that a sufficient showing has been made to establish that the officers and directors of this corporation directed and carried on its affairs in such substantial measure in the Eastern and Southern Districts of New York so that for the purposes of service of process it was found in the Eastern District, and that service upon Bernard Guadano, its secretary, was valid.[29]

## II. THE NONFEDERAL CLAIMS

█ Since the Federal claims alleged in Count II have survived the defendants' motion to dismiss, plaintiffs' nonfederal claims set forth in Counts I and III[30] relating to those same transactions

---

29. See S. E. C. v. Minas De Artemisa, 150 F.2d 215 (9th Cir. 1945). Cf. Lightner v. Pilgrim Paper Corp., 152 F.Supp. 504 (S.D.N.Y.1957); Pickthall v. Anaconda Copper Mining Co., 73 F.Supp. 694 (S.D. N.Y.1947). Industrial Waxes, Inc. v. International Rys. of Cent. America, 193 F.Supp. 783 (S.D.N.Y.1961), is not in conflict, since that diversity case involved "doing business" rather than "found," and there was not presented a situation in which all the directors and officers of the defendant corporation lived in the district where meetings were held.

30. Since Count III, based upon pendent jurisdiction, also includes the nonfederal claims set forth in Count I, the diversity count, as well as the Federal claims alleged in Count II, it appears that Count I is surplusage. It is also noted that it is not altogether clear, with respect to the misapplication of funds claim arising out of the Pure Oil Company transaction, that any violation of the Securities Act is alleged and, if not, pendent jurisdiction would not extend thereto. However, since it is included under the Federal subject matter count, its resolution is left for trial disposition.

are properly before this Court under the doctrine of pendant jurisdiction.[31]

▇▇▇ Defendants argue, however, that extraterritorial service of process under the Federal claim does not suffice to give personal jurisdiction with respect to the pendant claims. Some district courts, it is true, have taken that position.[32] But the better view appears to be that considerations of judicial economy and convenience of the parties which underlie the pendant jurisdiction doctrine require that extraterritorial service also be sustained as to the nonfederal pendant claims.[33] Moreover, the defendants' position is inconsistent with the view of our Court of Appeals [34] that a nonfederal claim, properly joined with a Federal claim under the doctrine of pendant jurisdiction, may not be dismissed in advance of trial—indeed, that such a dismissal is a nullity, since "the trial judge at the close of the case will still be obligated to grant the parties the relief to which they prove themselves entitled."[35]

### III. RES JUDICATA

▇▇▇ Next, the defendants urge the dismissal of the entire action upon a plea of res judicata or, more properly, of collateral estoppel. This contention, made after argument of the motion and submission of briefs, is based upon a judgment of the Second Circuit Court of Panama in an action brought by CAMO

against Marathon International Oil Company. Marathon, citing this litigation, raised the defense that the officers of CAMO were without authority to enter into the agreement. However, the plaintiffs were neither parties nor privies of parties to that litigation and are not bound by that result.[36] Moreover, the Panamanian court held only that the "mere existence" of the present suit in the Southern District of New York challenging the status of CAMO's officers did not suffice to excuse Marathon from performing a contract which it had entered into with CAMO in reliance upon official Panamanian files. In any event, liability under Federal securities legislation is not to be determined by application of Panamanian restrictions upon the right to sue.[37]

### IV. INDISPENSABLE PARTY

▇▇▇ The defendants contend that the complaint should be dismissed since Seagraves, to whom 2,000,000 shares of stock were also issued, is an indispensable party and has not been named as a defendant. While the complaint charges that stock was issued to the Guadanos for no or an inadequate consideration, no such claim is made as to Seagraves or that he despoiled the corporation in any manner. Plaintiffs are entitled to assert their own claims and may not be compelled to bring in a party as to whom no

31. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 324–325, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Hazel Bishop, Inc. v. Perfemme, Inc., 314 F. 2d 399, 403 (2d Cir. 1963).

32. Wilensky v. Standard Beryllium Corp., 228 F.Supp. 703 (D.Mass.1964); International Ladies' Garment Workers' Union v. Shields & Co., 209 F.Supp. 145 (S.D.N.Y.1962); Lasch v. Antkies, 161 F.Supp. 851 (E.D.Pa.1958).

33. Cooper v. North Jersey Trust Co., 226 F.Supp. 972, 980 (S.D.N.Y.1964); Townsend Corp. of America v. Davidson, 222 F.Supp. 1 (D.N.J.1963); Collings v. Bush Mfg. Co., 19 F.R.D. 297 (S.D. N.Y.1956) (dictum).

34. Schwartz v. Eaton, 264 F.2d 195 (2d Cir. 1959).

35. Id. at 197.

36. Defendants' argument that plaintiffs in this action, as shareholders, are privies of CAMO is without merit. Any other result would permit a corporation to immunize itself from derivative suits by the expedient of engaging in collusive litigation designed to raise questions which shareholders may later wish to press.

37. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Levitt v. Johnson, 334 F.2d 815 (1st Cir. 1964); Fielding v. Allen, 181 F.2d 163, 167–168 (2d Cir.), cert. denied sub nom. Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950).

charge is made. Moreover, even if it appeared that Seagraves were chargeable with breach of fiduciary conduct, this would not subject the complaint to dismissal for lack of an indispensable party. A litigant is not required to sue all those chargeable with wrongful conduct. As this Court stated:

"It is hornbook law that an aggrieved party is not compelled to sue all tortfeasors. He may sue one or more or all of them, at his discretion."[38]

## V. SECURITY FOR EXPENSES AND SECURITY FOR COSTS

 There remains for final consideration CAMO's motion for security for expenses under Section 627 of the New York Business Corporation Law since it appears the plaintiffs do not hold the amount of stock specified therein. Plaintiffs urge, however, that since, with respect to the Federal claims, state law requirements for security are inapplicable[39] and the defense thereof would require the same expenditure as resistance to the nonfederal claims, they should be exonerated from posting the security even as to the latter. This argument has been urged upon but rejected by our Court of Appeals as "both wrong and self defeating."[40]

Accordingly, further proceedings on the nonfederal claims in the second amended complaint are hereby stayed pending plaintiffs' posting security in the amount of $10,000 for defendant corporation's reasonable expenses in the defense thereof. In addition, plaintiffs, as nonresidents, are required to post security for costs in the amount of $250.[41]

Submit proposed order in accordance with the foregoing.

---

38. Robbins Music Corp. v. Alamo Music, Inc., 119 F.Supp. 29, 31 (S.D.N.Y.1954). See Corsicana Nat'l Bank v. Johnson, 251 U.S. 68, 84, 40 S.Ct. 82, 64 L.Ed. 141 (1919).

39. Borak v. J. I. Case Co., 317 F.2d 838 (7th Cir. 1963), aff'd, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); McClure v. Borne Chem. Co., 292 F.2d 824 (3d Cir. 1961); Fielding v. Allen, 181 F.2d 163 (2d Cir.), cert. denied sub nom. Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950).

40. Phelps v. Burnham, 327 F.2d 812, 814 (2d Cir. 1964); Fielding v. Allen, supra. In McClure v. Borne Chem. Co., supra, the plaintiff asserted no nonfederal claim, and therefore was required to post no security.

41. Local Rule 2.