**Evelyn LYONS, Plaintiff,**

v.

**MARRUD, INC., White, Weld & Co., Incorporated, Hornblower & Weeks-Hemphill, Noyes, J. E. Margolis, Saul Margolis, Henry Gesmer, Rubin Epstein, A. Phillip Goldsmith, Stuart M. Paley and Paul Hallingby, Jr., Defendants.**

**No. 66 Civ. 415.**

United States District Court
S. D. New York.
Aug. 2, 1968..

---

2. See Beal v. Schul, 383 F.2d 401 (3d Cir. 1967), dissenting opinion.

3. The Minnesota rule is identical to federal rule 26(b).

452

Kramer, Bandler & Labaton, New York City, for plaintiff.

Strasser, Spiegelberg, Fried & Frank, New York City, for defendant Marrud, Inc.

Shearman & Sterling, New York City, for defendant White, Weld & Co., Incorporated.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Hornblower & Weeks-Hemphill, Noyes.

Parker, Chapin & Flattau, New York City, for defendants J. E. Margolis and Saul Margolis.

Charles Trynin, New York City, for defendants Henry Gesmer and Rubin Epstein.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant A. Phillip Goldsmith.

Kramer, Nessen & Hochman, New York City, for defendant Stuart M. Paley.

MANSFIELD, District Judge.

This is one of a series of five related stockholders' suits, each instituted in 1966 by different stockholders of Marrud, Inc. arising out of 1965 primary and secondary public offerings of its stock. The defendants in each action are two of the Marrud stockholders who made the secondary offering (J. E. and Saul Margolis), the underwriters of the issue (White, Weld & Co. and Hornblower & Weeks-Hemphill, Noyes), and various Marrud directors (Gesmer, Epstein, Goldsmith, Paley, Hallingby).* The complaints allege that in violation of §§ 11 and 12 of the Securities Act of 1933 (15 U.S.C. §§ 77k and 77l) and §§ 9 and 10 of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78i and 78j) the defendants used a registration statement and prospectus that contained false and misleading statements and seek damages, costs and expenses. Subject matter jurisdiction is predicated on §§ 11 and 22 of the 1933 Act (15 U.S.C. §§ 77k and 77v).

The defendant-underwriters now move pursuant to Rule 13(g), F.R.Civ.P., for leave to serve a cross-motion upon the defendant J. E. Margolis and pursuant to Rule 14(a), F.R.C.P., third party complaints upon certain other selling stockholders, not joined as defendants, who participated in the secondary offering, asserting liability over against them under the terms of indemnity provisions of the underwriting agreement dated February 2, 1965 between the underwriters and the selling stockholders, pursuant to which the secondary offering was effectuated. The motion, which is opposed by the defendants J. E. and Saul Margolis, is granted.

The Court has jurisdiction over the subject matter, since the cross and third party claims arise out of the same facts and subject matter. The Court also has personal jurisdiction over defendant J. E. Margolis, and it appears probable that jurisdiction over the persons of the third parties will be secured. The granting of the motion will avoid a multiplicity of litigation that would be occasioned by the institution of independent, substantially duplicative, complicated, and protracted separate actions, which would otherwise be undertaken by the third party plaintiffs. Thus the effect of joining the third party and cross claims is to save the time of the Court and expense to the parties, without any appreciable prejudice to the opposing defendants.

Section 7(a) of the underwriting agreement obligates the selling stockholders to indemnify the underwriters against any liabilities arising out of false or misleading statements in the preliminary and final registration statement and prospectus, as amended and supplemented, except for statements made in reliance upon and in conformity with information furnished in writing by the underwriters for use therein. If the present motion were denied, the underwriters would be forced to commence separate suits against the selling stockholders seeking to enforce the indemnity agreement with respect to any liabilities resulting from the instant action and in such separate suits the underwriters can be required to present a second time, and conceivably several successive times, much of the evidence that will be received in the present case. Such a procedure would result in needless and expensive duplication that will be avoided if the cross and third party claims against the selling stockholders are tried in the present suits, which will undoubtedly be consolidated in order to achieve the same objective of saving time and expense. Undoubtedly there will be a few additional issues arising out of the third party complaint and cross complaint (for example, whether any alleged

* Touche, Ross, Bailey and Smart, independent accountants for Marrud, Publicity Consultants, Inc., Marrud's public relations firm, and Benjamin Sonnenberg, the latter's president, are named in some of the actions.

misstatements in the Registration Statement were made upon reliance of information furnished by the underwriters). Experience shows, however, that the amount of additional time and expense occasioned thereby is minimal when compared with that which would be required in order to present the entire picture again in several successive separate actions. Moreover, the plaintiffs and/or J. E. Margolis will undoubtedly desire to offer much of the same proof in the main action so that there is no prejudice to the opposing defendants, J. E. Margolis and Saul Margolis, especially when they would otherwise face the same duplication and expense in separate suits against them by the underwriters.

■ Thus the situation here is precisely that contemplated by Rule 13(g) and 14(a), which were designed to avoid multiplicity of litigation, particularly in protracted and complicated suits of the type apparently involved here by adjudicating in one action all of the claims arising out of substantially the same factual situation. At a time when this and many other federal courts are swamped with an ever-increasing backlog of protracted commercial litigation leading to public criticism because of the attendant delays, the salutary procedure afforded by Rule 14 must not be minimized. If the consolidated cases are to be tried before a jury, the trial judge has the power, should he believe it to be in the interest of orderliness and simplification of the issues, to direct that the plaintiffs' claims first be heard and decided and, if a verdict is rendered in favor of the plaintiffs, the cross-claim and third party claims may then be separately tried before the same jury, Rule 42(b), F.R.C.P., or the Court may in the exercise of its discretion direct that the jury, after hearing all of the evidence, submit separate verdicts in the form of written findings with respect to each of the principal issues, Rule 49(a), F.R. C.P.

■ The opposing defendants' suggestion that the Court lacks jurisdiction over the subject matter can be disposed of with little comment. Since the third party suit is ancillary to the main action growing out of the same "core of facts," Dery v. Wyer, 265 F.2d 804 (2d Cir. 1959), the Court's subject matter jurisdiction over the latter, which is not disputed, extends to the former, regardless whether the Court would have subject matter jurisdiction over the third party claim if separately instituted. Agrashell, Inc. v. Bernard Sirotta Company, 344 F.2d 583, 585 (2d Cir. 1965); Braun v. Hecht & Co., 21 F.R.D. 391 (S.D.N.Y. 1957); 3 Moore, Federal Practice ¶ 14.-04, ¶ 14.26 (2d ed. 1964). It therefore becomes unnecessary to consider whether an independent basis for federal jurisdiction, such as diversity, might exist with respect to the third party claims.

The opposing defendants next argue that the motion should be denied, at least as to the proposed third party defendants residing in Massachusetts, on the ground that personal jurisdiction cannot be obtained over them by service of process pursuant to Rule 4(f), F.R.C.P., which limits service to the territorial limits of this District or, where third parties are brought in pursuant to Rule 14(a), to a radius of not more than 100 miles from the courthouse. Technically the inability to secure *in personam* jurisdiction over the third parties would not require denial of this Rule 14(a) motion, since the granting of it merely constitutes an authorization to institute the third party actions, subject to personal jurisdiction being obtained. However, since the Movants do not suggest that personal service may be effected under Rule 4(f), the Court is reluctant to grant the motion in the absence of a reasonable likelihood of securing *in personam* jurisdiction over the third parties.

When Congress enacted the Securities Act of 1933, it apparently recognized that suits based on violations of the Act

would frequently involve multiple defendants located in different federal districts, all of whom would not be subject to service of process in any one district, with the result that a plaintiff seeking to enforce his rights under the law would be relegated to multiple suits in different districts, which would involve excessive delay, expense, duplication and inconvenience. See Schillner v. H. Vaughan, Clarke & Co., 134 F.2d 875 (2d Cir. 1943). Without extraterritorial service, the grant of private rights under the 1933 Act would therefore become an empty and meaningless gesture. Accordingly, Congress expressly provided that in any such private suit "brought to enforce any liability or duty created by this subchapter * * * process * * * may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found", § 22(a); 15 U.S.C. § 77v(a). Among the claims encompassed in this broad grant are those asserted by defendants who seek contribution from persons jointly and severally liable with them under the Act, § 11(f); 15 U.S.C. § 77k(f). The constitutional right of Congress thus to authorize extraterritorial service has repeatedly been recognized. E. g., Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 90 L.Ed. 185 (1946).

■ The proposed third party claims fall within the scope of those suits and actions as to which extraterritorial process is authorized by § 22(a). The movants' ancillary claim against the selling stockholders, although based in part on the indemnity provisions of the underwriting agreement, is fundamentally derived from, and dependent upon, the plaintiffs' claims in the main action which admittedly are suits "to enforce * * * liability or duty created by this subchapter", § 22(a). Moreover, the proposed third party defendants, being selling stockholders who participated in the secondary offering which is the sub-

ject of the main action, could have been joined as defendants in that action and served with process extraterritorially pursuant to § 22(a). Schillner v. H. Vaughan, Clarke & Co., supra; Stella v. Kaiser, 82 F.Supp. 301 (S.D.N.Y. 1948); Cooper v. North Jersey Trust Co., 250 F.Supp. 237 (S.D.N.Y.1965). The dependency of the third party claim upon a liability or duty created by the Securities Act is further underscored by the fact that if judgment is rendered in favor of the defendants in the main action, the third party claim automatically falls. Under such circumstances it would be both hypertechnical and unjust to hold that the third party claim does not seek to "enforce a liability or duty created by" the 1933 Act within the meaning of § 22(a).

■ The same principles which have led to the rule that a court having subject matter jurisdiction over the claim asserted in the main action it must assume such jurisdiction over an ancillary claim asserted in a third party suit, Dery v. Wyer, *supra*, require that extraterritorial personal service be extended to such ancillary claims, namely, the avoidance of unnecessary expense, duplication and multiplicity of litigation. United States v. Rhoades, 14 F.R.D. 373 (D. Colo.1953), cited by the opposing defendants as holding that extraterritorial service may not be extended to a third party claim, involved the Housing and Rent Act of 1947, not the Securities Acts, and the nature of the original claim and third party claim are not stated in the Court's extremely brief opinion. The view that process authorized by § 22(a) extends to third party defendants, on the other hand, was accepted in Miller v. Hano, 8 F.R.D. 67 (E.D. Pa.1947), and is supported by decisions holding that such process will suffice to give personal jurisdiction with respect to pendent claims. Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559

(S.D.N.Y.1964). As Judge Weinfeld stated in *Kane*:

"[T]he better view appears to be that considerations of judicial economy and convenience of the parties which underlie the pendent jurisdiction doctrine require that extraterritorial service also be sustained as to the nonfederal pendent claims." 235 F. Supp. at 568.

Since the present decision with respect to extraterritorial service is not based on Rule 14(a), F.R.C.P., the decisions of Verner v. Moran Towing & Transp. Co., 258 F.Supp. 169 (S.D.N.Y.1966) and Casey v. Calmar S.S. Corp., 138 F.Supp. 751 (D.Del.1961) cited by the opposing defendants, which held that Rule 14(a) does not provide an independent basis for *in personam* jurisdiction, have no application; and it becomes unnecessary to determine whether "personal jurisdiction * * * should also be resolved by a rule fashioned especially for third-party claims", Agrashell Inc., 344 F.2d at 585, or to consider whether personal jurisdiction might be secured over the third parties on a diversity of citizenship basis pursuant to § 302(a), N.Y.CPLR which was carefully considered by Judge Levet in *Verner*.

██ The assertion of the opposing defendants that the present motion is untimely and would delay a speedy trial must be rejected as baseless. Although the five related suits here involved were commenced two years ago, a restraining order was issued on August 25, 1966 by a Referee in Bankruptcy in a Chapter XI proceeding in the Massachusetts District Court involving Marrud, which had the effect of enjoining the present proceedings until March 18, 1968. While it is true that some pretrial discovery has been undertaken, it appears clear that by far the greatest amount of such preparation lies in the future. Accordingly, this Court, after carefully reviewing the papers filed in this and the related proceedings and hearing argument, believes that the motions are not untimely and that institution of the cross claims and third party proceedings would be in the interests of justice and judicial economy.

The motion is granted.

So ordered.