[Civ. No. 53473. First Dist., Div. Two. Mar. 4, 1982.]

LAKEWOOD BANK AND TRUST COMPANY, Petitioner, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; JOHN C. BERGMAN, JR., et al., Real Parties in Interest.

464

**COUNSEL**

Pillsbury, Madison & Sutro, John A. Sutro, Jr., Walter R. Allan and Ardell Johnson for Petitioner.

No appearance for Respondent.

Stephen M. Kass, Richard G. Blair, Stephanie Tramz Timar, Buchman, Kass, Morgan & Miller, Bronson, Bronson & McKinnon, Richard J. Stratton, Keith R. Weed, Robert L. Lieff, Elizabeth Joan Cabraser and Lieff & Cabraser for Real Parties in Interest.

**OPINION**

**MILLER, Acting P. J.**—Pursuant to Code of Civil Procedure section 418.10, subdivision (c) petitioner seeks a writ of mandate to compel the superior court to enter its order quashing service of summons on petitioner.

Petitioner Lakewood Bank and Trust Company is a Texas state bank which is named as a cross-defendant in a cross-complaint.

*The Second Amended Complaint*

According to the second amended complaint filed in this action some time prior to November 1978, defendant S. Bruce Smith and his sole proprietorship, defendant S.B.S. Investments, purchased an apartment

complex in Dallas, Texas, known as Oak Hill Villas. Smith and S.B.S.'s acquisition of the apartments was financed by usurious loans obtained from defendant David A. Morgensen, a real estate agent employed by defendant Real Estate Network Realty One, and other lenders organized by him. The loans, repayable in 90 days at 50 percent interest, and not reported in Smith's financial statements, were secured by unrecorded liens on the apartments. In addition, Morgensen also received a finder's fee of 10 percent of the amount of each loan he obtained for Smith for the purchase of the apartments.

Defendants John C. Bergman, Jr. (Bergman) and Klara Bergman (real parties in this proceeding) are real estate brokers located in San Mateo County, California. They are officers, directors and shareholders in defendants Bergman & Associates, Bergman Enterprises, Inc., United States Vesting, Inc. and International Vesting, Inc. Defendants Paul Williams, Wayne Pierce and Richard Delaney (real parties in this proceeding) were employees of Bergman and/or one or another of his aforementioned companies.

Some time prior to November 1978, Network, Morgensen and Smith contacted Bergman with a view to his selling tenancy-in-common interests in Oak Hill Villas to plaintiffs. In so doing, Network, Morgensen and Smith concealed from Bergman (and, later, plaintiffs) the existence of the usurious loans, unrecorded liens and finder's fees.

All defendants then made a number of misrepresentations to plaintiffs about the apartments regarding, inter alia, the desirability and profitability of investing in the apartments, the condition of the buildings, the occupancy break-even point, the occupancy rate, the financial reliability of the tenants and the lengths of their leases, the quality of the neighborhood in which the apartments were located, the projected cash flow and the rate of capital appreciation that might reasonably be expected from the investment. Particularly relevant to the issues in this petition are the allegations that the offering circular stated that S.B.S. investments and S. Bruce Smith possessed expertise in managing such property and that defendants Bergman and Smith possessed special skills, knowledge and experience in managing renovated urban property in general and Oak Hill Villas in particular. Based on these misrepresentations made by defendants, in or about November 1978, plaintiffs purchased tenancy-in-common interests in the Oak Hill Villas apartments, for which they paid part in cash and the rest in the form of a promissory note to Smith.

When plaintiffs subsequently lost the apartments through foreclosure proceedings, they brought this action against defendants. The first four causes of action of plaintiffs' second amended complaint allege that the tenancy-in-common interests sold to plaintiffs were "securities." These causes of action allege violations of sections 5 and 12 of the Securities Act of 1933 (15 U.S.C. §§ 77e, 77l) and various provisions of the California Corporations Code based on a failure to register and to secure a permit for these "securities." The fifth cause of action seeks damages for violations of section 12 of the Securities Act of 1933 and section 25401 of the California Corporations Code based on various oral and written misrepresentations. Among the misrepresentations alleged to be a violation of these securities laws is that defendants misrepresented that the Oak Hill Villas property would be adequately managed. The sixth cause of action seeks punitive damages based upon all the preceding securities laws allegations.

The seventh cause of action of plaintiffs' second amended complaint alleges negligence in the management, control and operation of Oak Hill Villas. The allegations of negligence attributed to those defendants who are real parties in the present petition concerned the failure to investigate the investment potential of Oak Hill Villas property and then, subsequent to the purchase of the real estate syndicate securities by plaintiffs, failure to safeguard plaintiffs' investments from loss. The remaining 11 counts of the second amended complaint allege various counts of negligence and fraud, not here pertinent.

*Petitioner and the Cross-complaint*

On December 24, 1980, Bergman, his wife, his companies and his employees, the real parties in this petition, filed a cross-complaint for indemnity against the original plaintiffs, codefendants and petitioner. As alleged in the cross-complaint, petitioner is a Texas state bank with its principal place of business in Dallas, Texas. Petitioner is not qualified to do nor is it doing business in California.

The pertinent cause of action against petitioner alleges that in November 1978, "LAKEWOOD entered into a collection and disbursing agreement with SMITH and plaintiffs, wherein LAKEWOOD agreed to collect monies generated from rents collected from the Oak Hill Villas, and to thereafter pay a portion of said monies to certan lienholders who held promissory notes secured by deeds of trust on the Oak Hill Villas. . . . LAKEWOOD knew that plaintiffs were residents of the State of

California, that the collection and disbursing agreement was for the benefit of plaintiffs, and that it had been executed in the State of California...." It is further alleged that as a result of certain acts and omissions on the part of Lakewood real parties failed to learn of a serious cash flow shortage at the Oak Hill Villas until a time when foreclosure proceedings had already commenced and Oak Hill Villas became irretrievably lost. As a proximate result, real parties were unable to take timely steps to take over management of the property and to ensure that the income from the Oak Hill Villas was properly used to restore, renovate and maintain the premises.

Pursuant to Code of Civil Procedure section 418.10, petitioner moved the trial court to quash service of summons upon it on the ground that California lacked personal jurisdiction over it. The court apparently denied the motion on the grounds that section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)) conferred personal jurisdiction over petitioner.[1]

Section 22(a) of the Securities Act of 1933 provides in pertinent part: "The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found...."

█ It is settled that under this section state courts have concurrent jurisdiction with federal courts over suits arising under the Securities Act of 1933. (*Moran* v. *Paine, Webber, Jackson & Curtis* (W.D.Pa. 1966) 279 F.Supp. 573, 579, affd. 389 F.2d 242; *Jennings* v. *Roberts Scott & Co., Inc.* (1976) 113 Ariz. 57 [546 P.2d 343, 345].) Thus, the sole issue to be decided by this court is whether real parties' cross-

---

[1] Although the order denying the motion to quash does not expressly state the grounds on which the motion was denied, real party in interest requested that should the lower court hold that petitioner was not subject to jurisdiction under section 22(a) the hearing on "minimum contacts" under the California long-arm statute should be continued. Presumably the court found the federal statute applicable, rendering further hearings superfluous.

complaint for indemnity falls under "any liability or duty" created by the Securities Act of 1933.

The underlying complaint in the instant action specifically alleges that defendants "violated relevant portions of the Securities Act of 1933 by selling said real estate securities to Plaintiffs without filing a registration statement for the sale of security interests, as required by the Act. . . . In failing to satisfy said registration requirements of the Act, Defendants . . . violated Sections 5, 12(1) and 12(2) of the Securities Act of 1933 (15 U.S.C. Sections 77e and 77*l*). At all times herein mentioned, Defendants . . . omitted to disclose said failure to register to plaintiffs." Additionally, it alleges false representations including the fact that defendants John Bergman, Klara Bergman, and International Vesting possessed special skills, knowledge, expertise and experience in managing, evaluating and appraising the economic viability of renovated urban property in general and Oak Hill Villas in particular. These are the only accusations that purport to be violations of the Securities Act of 1933. The second amended complaint contains a separate cause of action against real parties for common law negligence alleging inter alia that subsequent to the purchase of the real estate syndicate securities real parties failed to exercise reasonable care in managing and operating the property.

Relying heavily upon *Lyons* v. *Marrud, Inc.* (S.D.N.Y. 1968) 46 F.R.D. 451, real parties contend that since the gravamen of the second amended complaint is violation of securities law, a cross-complaint seeking indemnity on *any* cause of action falls within the nationwide service of process provisions of section 22(a) of the Securities Act of 1933. The contention cannot be supported.

In *Lyons* purchasers of stock sued the sellers of the stock and the underwriters of the stock offering. The underwriters then brought third party complaints for contractual indemnity against other selling stockholders not joined as defendants who had participated in the secondary offering that was the subject of the main action. The underwriting agreement obligated the selling stockholders to indemnify the underwriters against any liabilities arising out of false or misleading statements in the preliminary and final registration statement and prospectus except furnished by the underwriters. In addressing the proposed cross-defendants' objections that the court lacked jurisdiction over them, the court discussed the rationale and scope of the nationwide service of process provision of the Securities Act of 1933: "When Con-

gress enacted the Securities Act of 1933, it apparently recognized that suits based on violations of the Act would frequently involve multiple defendants located in different federal districts, all of whom would not be subject to service of process in any one district, with the result that a plaintiff seeking to enforce his rights under the law would be relegated to multiple suits in different districts, which would involve excessive delay, expense, duplication and inconvenience. [Citation.] Without extraterritorial service, the grant of private rights under the 1933 Act would therefore become an empty and meaningless gesture. Accordingly Congress expressly provided that in any such private suit '*brought to enforce any liability or duty created by this subchapter* ... process ... may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found', [citation]. Among the claims encompassed in this broad grant are those asserted by defendants who *seek contribution from persons jointly and severally liable with them under the Act*, [citation]." (46 F.R.D. 454-455, italics supplied.) The court then found it had jurisdiction over the proposed cross-defendants since the third party claims fell within the scope of "those suits and actions as to which extraterritorial process is authorized by § 22(a)." (*Ibid.*) The court noted that the third parties had themselves participated in the Securities Act violations alleged in the underlying complaint, could have been joined as defendants in that action, and that although the claims against them were based in part on the indemnity provisions of the underwriting agreement, the claims were "fundamentally derived from, and dependent upon, the plaintiffs' claims in the main action." (*Ibid.*) The decision in *Lyons* clearly rests on the court's determination that it had *subject matter* jurisdiction over the third party complaints.

█ While it is true that the nationwide service of process provisions of section 22(a) and the similar section of the Securities Exchange Act of 1934 may confer personal jurisdiction over a defendant for pendant state law claims (See, e.g., *Robinson* v. *Penn Central Company* (3d Cir. 1973) 484 F.2d 553, 555-556; *Fulk* v. *Bagley* (M.D.N.C. 1980) 88 F.R.D. 153, 167 and cases cited therein), this is only the case after the court has obtained subject matter jurisdiction on a federal issue and can justify entertaining state claims in the interest of judicial economy. (See, *Robinson* v. *Penn Central Company, supra*, 484 F.2d 553; *Kane* v. *Central American Mining & Oil, Inc.* (S.D.N.Y. 1964) 235 F.Supp. 559, 564.) Thus, a California court may obtain jurisdiction over petitioner pursuant to section 22(a) only if it can be shown that a claim against petitioner is either brought to enforce any liability or duty cre-

ated by the Securities Act of 1933 or is fundamentally derived from and dependent on such claim.

The single cause of action against petitioner in real parties' cross-complaint for indemnity provides that after petitioner entered into the collection and disbursing agreement with Smith and plaintiffs 1) petitioner learned in December 1978 that the income that was being paid from Oak Hill Villas rent receipts was insufficient to pay all of the lienholders as required under the agreement; 2) in January 1979, petitioner modified the payment schedule so that Smith was not paid on his promissory note; 3) in March 1979, petitioner commingled four operating checking accounts for four different apartment projects in order to prevent Smith from writing checks on insufficient funds from one account to the other; 4) in March 1979, petitioner failed to make payment to an underlying lienholder; and 5) petitioner failed to inform any of the parties, including plaintiffs and real parties, of these events. As a result of these acts or omissions both the underlying lienholder and Smith commenced foreclosure actions against plaintiffs as owners of Oak Hill Villas. As a further result of petitioner's acts or omissions real parties were unable to take timely steps to take over management of the property and prevent the eventual foreclosure.

It is obvious that all the alleged acts and omissions by petitioner occurred subsequent to November 1979, after the property was exchanged. Since violations of sections 5, 12, and 17[2] of the Securities Act of 1933 are tied to the offer or sale of securities (See, *Lewis v. Walston & Co., Inc.* (5th Cir. 1973) 487 F.2d 617, 621-622; *Mendelsohn v. Capital Underwriters, Inc.* (N.D.Cal. 1979) 490 F.Supp. 1069, 1087; *Kogan v. National Bank of North America* (E.D.N.Y. 1975) 402 F.Supp. 359, 361), there can be no claim that petitioner directly violated those sections. No assertion has been made that petitioner had any direct or indirect responsibility for the failure to register the subject securities. Liability for the fraudulent offer or sale or securities under federal law is limited to those parties whose participation in the buy-sell transaction is a "substantial factor" in causing the transaction to take

---

[2]For the first time before this court, real parties John Bergman, Jr., Bergman & Associates, Bergman Enterprises, Inc., United States Vesting, Inc. and International Vesting, Inc., present the argument that petitioner could have been sued by plaintiffs under section 17(a)(3) of the Securities Act of 1933. (15 U.S.C. § 77q(a)(3).) Because this contention may be disposed of by other means we do not reach the issue of whether a private cause of action exists under section 17(a). (See, *McFarland v. Memorex Corp.* (N.D.Cal. 1980) 493 F.Supp. 631, 649-653.)

place. (*Pharo v. Smith* (5th Cir. 1980) 621 F.2d 656, 668.) Since petitioner "did not participate in the arrangements or negotiations for the sale and therefore its actions were not a substantial factor in bringing about the plaintiffs' purchases" (*Mendelsohn v. Capital Underwriters, Inc., supra*, 490 F.Supp. 1069, 1087), there can be no direct liability for violations of provisions of the Securities Act of 1933.

There is also no indication that real parties' claims against petitioner are "fundamentally derived from, and dependent upon," the plaintiffs' claims in the main action to enforce liability or duty created by the Securities Act of 1933. The only cases this court has been able to find that use the "fundamentally derived from, and dependent upon" phraseology are *Lyons* and *Wassel v. Eglowsky* (D.Md. 1975) 399 F.Supp. 1330.

As previously discussed, the third party defendants in *Lyons* were selling stockholders, not joined as defendants, who *participated* in the secondary offering and contractually agreed to indemnify the underwriters for liability arising from misrepresentations in the registration statement and prospectus.

*Wassel* involved two third party claims, one against a bank that acted as a transfer agent for stock and one against an attorney who actively participated with the defendants in the main action in arranging for the sale of the stock. In discussing acquisition of personal jurisdiction over a third party defendant, the court relied on the *Lyons* phraseology. It then concluded there was no jurisdiction over the bank, but there was jurisdiction over the attorney. The court stated that the attorney's conduct fit the "fundamentally derived from and dependent upon" terminology since *but for* the attorney's wrongful actions the defendants in the main action could not have made the sale. The attorney "was one of the key persons in bringing about and making possible the sale. . . . His actions were a 'proximate cause' of the sale. . . ." (399 F.Supp. at p. 1369.) Unfortunately, the ruling of no jurisdiction as to the bank is inapposite to the present case. The decision was based on a finding of no wrong-doing, either prior or subsequent to the sale of the securities.

Because of the fact situations in *Lyons* and *Wassel* plus the lack of similar language in other federal cases, we can only conclude that claims that are "fundamentally derived from, and dependent upon" suits to enforce liability or duty created by the Securities Act are limited to claims against parties who actually are involved in either the offer

or sale of the security. This conclusion is supported by federal cases which hold that conduct occurring after a sale cannot be the basis of liability under section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) or SEC rule 10b-5. (See, *Resource Investors* v. *Natural Resource Inv. Corp.* (E.D.Mich. 1978) 457 F.Supp. 194, 197 and cases cited therein.)[3]

It is readily apparent that real parties are attempting to bring petitioner's alleged misfeasance or nonfeasance within the scope of the Securities Act of 1933 solely for the purpose of obtaining jurisdiction. With this end in mind they have latched on to some rather unfortunate phraseology appearing in *Lyons*. In a sense any loss in the value of a security is "fundamentally derived from and dependent upon" the initial purchase of the security. Thus, an owner's loss due to mismanagement in a corporation or a change in market conditions is dependent upon the fact the owner purchased the security in the first place. While fraud may have occurred in the offer and sale of the security, that fraud may not have been the cause of the owner's loss. We do not believe, and case law does not appear to support the theory, that the scope of the Securities Act of 1933 extends to protection against events occurring subsequent to the sale of a security. Liability under the act must be limited to conduct that relates to the offer or sale of the security. Since petitioner's conduct was not related to the offer or sale of Oak Hill Villas, it cannot be liable for violations under the act.

Real parties contend that petitioner could have been named as original defendant and, therefore, should be joined as a cross-defendant. While it is true that the original plaintiffs could have brought suit against petitioner for negligence, they would have encountered the identical problem in obtaining jurisdiction over petitioner. Without being able to demonstrate that petitioner was involved with the purchase or sale of the property they would have been unable to obtain jurisdiction pursuant to section 22(a).

---

[3]In *Resource Investors* v. *Natural Resource Inv. Corp.* (E.D.Mich. 1978) 457 F.Supp. 194, a case wherein an action was filed against various parties for violations of federal securities laws, breach of contract, fraud and negligence, the court, relying on *Kogan* v. *National Bank of North America* (E.D.N.Y. 1975) 402 F.Supp. 359, made the distinction between fraud actions brought pursuant to section 10(b) of the Securities Exchange Act of 1934 or SEC rule 10b-5 and those brought under the Securities Act of 1933: Liability under the Securities Act of 1933 is *narrower* than under rule 10b-5 "in that the fraud must actually be in the offer or sale itself, rather than in connection thereto." (457 F.Supp. at p. 197.)

Real parties Williams and Pierce also contend that if the alleged misrepresentation that Oak Hill Villas would be competently managed is found to be a violation of section 12(2), these statements were false partially because of the actions of petitioner. Generally speaking, "[s]tatements honestly made as to the soundness and safety as an investment of bonds, and as to the worth of stocks and the prospects for return on an investment therein, have been held to be mere expressions of opinion." (34 Cal.Jur.3d, Fraud and Deceit, § 16, p. 571.) Accordingly, it is unlikely that real parties could be liable for violations of the Securities Act of 1933 solely on such an allegation. Even assuming such an allegation was found to be true, there would have to be some evidence that real parties knew the representation to be false at the time the statement was made. (See, e.g., *Henningsen* v. *Anderson* (1931) 212 Cal. 336 [298 P. 999].) Since petitioner was not a party to the offer and sale of the property no indemnification would be possible.

In light of the above, we hold that jurisdiction over petitioner may not be obtained pursuant to section 22(a) of the Securities Act of 1933.

The remaining arguments in this petition pertain to whether petitioner has had sufficient "minimum contacts" in California to subject it to service of process under California's long-arm statute. (Code Civ. Proc. § 410.10.) At oral argument all parties agreed that this issue was not reached below, since the trial court based its finding of jurisdiction on the Securities Act of 1933.

Let a peremptory writ of mandate issue directing the respondent court to vacate its order denying motions to quash and dismiss filed August 3, 1981, and to hold further proceedings on the applicability of Code of Civil Procedure section 410.10.

Smith, J., and Taylor, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.